BOSMA v. DANIELS.

MOTOR VEHICLES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.
In pedestrian's action for personal injuries inflicted by defendant's automobile, judgment on directed verdict in favor of defendant, on ground that plaintiff was guilty of contributory negligence, is affirmed by equally divided court.

Error to, Superior Court of Grand Rapids; Verdier (Leonard D.), J. Submitted October 15, 1930. (Docket No. 90, Calendar No. 34,495.) Decided April 7, 1930. Rehearing denied June 2, 1930.

Case by John J. Bosma against W. Smalley Daniels for personal injuries. From a judgment on directed verdict for defendant, plaintiff brings error. Affirmed by an equally divided court.

*McAllister & McAllister*, for plaintiff.

*Rodgers & Dunn*, for defendant.

BUTZEL, J. Plaintiff, a mail carrier in the city of Grand Rapids, brought this suit to recover damages resulting from severe injuries to his right leg through being struck by an automobile driven by defendant. Upon the conclusion of the testimony for the plaintiff, the trial judge held that plaintiff was guilty of contributory negligence, and directed a verdict for defendant. Plaintiff appeals from the judgment rendered on the verdict.

At 10:15 on the morning of April 24, 1928, plaintiff, while in pursuit of his duties, had occasion to cross Sheldon avenue, a street in Grand Rapids, Michigan. The street runs north and south and is 29½ feet in width. Plaintiff crossed at the northeast corner of Sheldon avenue and Elder court, a short street that runs from the east into Sheldon avenue and terminates there. The walk on the north side of Elder court ends at the sidewalk on Sheldon avenue. It does not cross the lawn between the sidewalk of Sheldon avenue and the curb. Plaintiff did not cross at the intersection of the two streets, but "kitty-cornered" to a driveway some 35 or 37 feet north of the corner. When he started

to cross from this point to the west line of Sheldon avenue, he states that he saw two cars coming in a southerly direction and one coming in a northerly direction; that the nearest car coming in a southerly direction was probably 40 or 35 feet north from the point at which he was standing, and that the other car going south was between 40 and 45 feet back of the first car; that both these cars were on their right side of the street, about five feet from the center and very much in line. The first car going south was going at the rate of between 15 and 20 miles an hour and the car in the rear of it was going 25 miles an hour. Both south-bound cars were five feet west of the middle of the street. He further stated that he saw defendant's car at the intersection of Sheldon avenue with Highland avenue and coming in a northerly direction, about 400 feet away. The car was on its right side of the street. He estimated the speed at which it was coming at 30 miles an hour.

Plaintiff started to cross the street, going to a point near the middle of the road. He remained there until the first south-bound car had passed him. Thereupon, instead of waiting for the second car to pass and then crossing the road, he looked around, and, seeing that defendant was 150 feet away and had increased the speed to what he estimated to be 40 miles an hour and was in a straight line in front of him, he turned back and ran 25 feet in a northeasterly direction along the street towards the curb on the easterly side of Sheldon avenue. There is no claim that defendant was not on the right side of the street. Defendant, in order to avoid striking plaintiff, turned his car to the easterly side of the street. The right end of the front bumper of the car struck plaintiff on the right leg while he was about to step

on the curb. Plaintiff was thrown two or three feet on the lawn. Defendant stopped at once, and in answer to plaintiff's question, "You were going pretty fast, weren't you?" he replied: "I didn't skid very far." Plaintiff testified that he started to turn back from the middle of the street after the first car going south had passed him and when the second car going south, which had not yet passed him, was only ten feet north of him.

Each of the cars was on its proper side and not in the middle of the street near which plaintiff was standing. There was no other traffic in the vicinity. Plaintiff testified that when he turned back to return to the east side of the street, the second south-bound car, going 30 miles an hour, was only ten feet north of him, and defendant's north-bound car was 150 feet south of him and on the other side of the street. According to plaintiff's testimony, the defendant's car was going only a little over one and one-third times as fast as the south-bound car, and he had ample opportunity to get out of the way of the north-bound car. According to his own figures, by the time the south-bound car had passed him, the north-bound car was still over 100 feet south of him, and there was no danger whatsoever under the circumstances. Notwithstanding this, however, instead of waiting for the south-bound car, only ten feet away, to pass him, as an ordinarily prudent person would have done, plaintiff chose to try to run across the street in the path of the north-bound car and thus was struck. We believe this was contributory negligence, and the court was correct in directing a verdict.

There was ample space between the point plaintiff reached near the middle of the street and the east curb for defendant's car to pass and still leave

plaintiff in a position of safety. He, moreover, could have put himself in a position of still greater security by proceeding further west on the street, there being an additional six feet between where he had stood and the line of progress of the south-bound car. He could have waited for the south-bound car to pass and then proceeded to the west curb. It would have required but one-half a second for the south-bound car to pass. This was but one-fifth the time that it took defendant's car to reach the point from which plaintiff had turned back. It was logical for the defendant to believe that plaintiff would continue across the street. There were still 150 feet in which defendant could deflect the course of his car to the very slightest extent so as to give plaintiff still more room. This would seem to have been exactly what was done, as plaintiff was struck close to the east curb. The street was only 29½ feet wide. It is admitted by plaintiff that defendant's car was not in the middle of the street but near the middle of the street. After allowing for the width of an automobile, there would be comparatively a small distance, in accordance with plaintiff's own version, between the path of defendant's car and the curb. It would seem, therefore, that plaintiff ran into a position in front of the advancing car. He admits on cross-examination he ran some 25 feet along the east side of the street. Plaintiff did not suddenly find himself in an emergency where the selection of one possible means of escape, proving to be the wrong one, is excused. He had started across the street with full knowledge that defendant's car was approaching. If his statement as to the distance defendant's car was from him and the rate of speed at which it was going is correct, then he should have waited for the car to pass. A

prudent person would have waited. It is extremely difficult for one standing in front of a rapidly approaching car to tell the rate of speed at which it is moving. It is still more difficult under such circumstances to be able to tell that the speed of a car has been accelerated from the rate of 30 to 40 miles an hour. Assuming that plaintiff was able to do this, he then must have been able to grasp all the other details, and should have waited a half second for the south-bound car to pass him, and then proceeded to a place of absolute safety. The conditions of modern traffic in a large city are such that one must frequently wait for the traffic coming one way to pass him, then go to the middle of the road and wait for the traffic coming in the opposite direction to pass him in order to continue his journey. One who vacillates and then runs back puts himself in a position of danger and may be struck by an approaching car. The motorist seeing a pedestrian crossing a street would come to the conclusion that the journey was to be completed. In the present case it was not even necessary for plaintiff to go to the middle of the road. There was no crowded condition. There were only three cars in the vicinity. Plaintiff first went to the middle of the road and then turned back and was struck by a car coming on its right side of the street. Defendant was not bound to anticipate that plaintiff would suddenly change his mind and run into his direct path. Plaintiff's testimony would indicate that defendant was very near him and saw plaintiff in the middle of the street. It was not a case where the last clear chance or discovered peril doctrine may be invoked. Defendant did what a reasonable person would have done in deflecting his course towards the curb so as to give plaintiff still more room. Even if defendant

was guilty of negligence, plaintiff was guilty of contributory negligence.

Many cases are cited by both parties to support their contentions. While none of them are exactly in point, we believe the case is governed largely by the rule set out in *Ude* v. *Fuller,* 187 Mich. 483, where we stated:

"In our opinions this situation presents a stronger case of contributory negligence than that presented to this court in *Gibbs* v. *Dayton,* 166 Mich. 263 (quoting from that case).

"In that case there was doubt as to whether the boy saw the oncoming automobile a few rods away, but here there is no question that the boy saw the oncoming car when it was still 100 feet away. We cannot escape the conclusion that it was conclusively shown by the plaintiff's own testimony that he failed to use that reasonable degree of care to avoid injury proportionate to the circumstances which the law makes essential to a recovery, and by his own negligence contributed to the accident."

The decision of the lower court is affirmed, with costs to defendant.

WIEST, C. J., and CLARK and SHARPE, JJ., concurred with BUTZEL, J.

McDONALD, J. (*for reversal*). I am unable to agree with the result reached in this case by my Brother BUTZEL. In my opinion he has arrived at a wrong conclusion by assuming, contrary to the undisputed testimony, that the plaintiff ran into the path of the defendant's automobile and was injured while defendant was trying to avoid hitting him. The record discloses that when the plaintiff left the curb, he saw the defendant to the south 400 feet away driving north at a speed of about 30 miles an

hour.  He crossed to within one foot of the center of the street and there stopped to await the passing of two cars approaching from the north.  He testified:

"After I got out there, I looked again to the south.  As I looked to the south I saw this car still going north.

"Q.  Where was it at that time, when you turned around to look, to the south?

"A.  About 150 feet from there.

"Q.  Did you notice how that car was running, coming north?

"A.  Yes, sir.

"Q.  What part of the street was it running in?

"A.  Pretty much in the middle of the street, about right there (indicating on map).

"Q.  Where was it coming in reference to where you were standing in the street?

"A.  Right straight for me.  That car was running at that about 40 miles an hour.  When I saw that car coming directly at me and going at that rate of speed I dashed for the curb."

In turning back to the curb, was he guilty of contributory negligence as a matter of law?  My Brother holds that he was negligent in turning back to the east curb instead of remaining where he stood until the south-bound car had passed, when he could have crossed safely to the west side of the street.  It must be remembered that the plaintiff was standing one foot from the center of the street directly in the path of the defendant's car, which was moving toward him at a speed of 40 miles an hour.  At that rate of speed, if he had remained where he stood, the automobile would have been upon him in 2½ seconds.  Ordinary care for his safety required him to move at once, and very naturally and prudently he

moved into that part of the street where there was no car. There was a car in the west side of the street. The defendant was driving in the middle, and the east side was clear. To a man of ordinary prudence, going to the east side looked like a safe course to take, especially in view of the position of the defendant. He was out in the center of the street 150 feet away. He could see everything before him. He could see every move the plaintiff made. In these circumstances, the plaintiff had a right to assume that if he ran back to the east curb away from the path of the automobile the defendant would not follow him and run him down. But it is said that this way was a dangerous way and that he was guilty of negligence in choosing to take it instead of taking a safe way to the west. It is a rule too well established to require the citation of authorities that where one had two ways of escape from threatened injury, the fact that he took the one by which he was injured will not of itself render him guilty of contributory negligence, when, if he had taken the other way, he would not have been injured. As to whether the way he adopted was dangerous, it should be noted that it was safe at the time he chose it, and only became dangerous because of the negligence of the defendant.

The question of contributory negligence was for the jury. The court erred in directing a verdict. The judgment should be reversed, and a new trial granted. The plaintiff should have costs.

POTTER, NORTH, and FEAD, JJ., concurred with McDONALD, J.