SHANK *v.* LUCKER.

1. APPEAL AND ERROR—EVIDENCE—DIRECTED VERDICT—JUDGMENT NON OBSTANTE VEREDICTO.
   On appeal from denial of defendant's motions for directed verdict and for judgment *non obstante veredicto,* testimony is viewed in the light most favorable to plaintiff.

---

That plaintiff, to be free from contributory negligence, must act as a reasonable man under standards set by legislature, court, or jury, see 2 Restatement, Torts, § 475.

That breach of statute constitutes negligence, see 2 Restatement, Torts, § 285 (a), illustration (3), and comment (h).

2. AUTOMOBILES—SPEED—LIGHTS—NEGLIGENCE.

Motorist who operated car in the nighttime without lights and at speed in excess of 30 miles an hour was guilty of negligence as a matter of law in striking pedestrian (1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933).

3. NEGLIGENCE—PEDESTRIAN CROSSING A STREET—DUE CARE.

A pedestrian seeking to cross a street must make reasonable use of his senses of sight and hearing.

4. AUTOMOBILES—PEDESTRIANS—EQUAL RIGHTS IN STREETS.

The rights of pedestrians and motorists in the use of public streets and highways are substantially the same and each must use them with due regard for the rights of the other.

5. SAME—PEDESTRIANS—CROSSING STREET—NEGLIGENCE AS MATTER OF LAW.

A pedestrian, attempting to cross a busy street, who waits for traffic coming one way to pass him, goes to middle of the street and waits for traffic coming from opposite direction to pass him, is not guilty of negligence as a matter of law as he has a right to assume under such circumstances that a motorist will not run him down and will give proper warning signal of his approach.

6. SAME—LIGHTS—SPEED—PEDESTRIANS—CROSSING STREETS.

A pedestrian who starts to cross a street in the nighttime has a right to expect that any car approaching from his left would be properly lighted and would not be traveling in excess of the speed limit (1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933).

7. SAME—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—LIGHTS—SPEED.

Issue of contributory negligence of pedestrian who was in the nighttime crossing a street 60 feet wide from curb to curb along which cars were parked at an angle, who made observation to left while halfway between parked cars, saw nothing approaching from the left as he continued two feet beyond the parked cars, looked to the right as he proceeded four feet further, waiting for car to pass right to left, and upon resumption of course across street was struck by defendant's unlighted car which approached from left at speed in excess of that permitted by statute, was a question of fact and properly submitted to jury (1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933).

Appeal from Berrien; Evans (Fremont), J. Submitted January 17, 1941. (Docket No. 79, Calendar No. 41,424.) Decided March 11, 1941.

Case by Cecil Shank against Fred Lucker, Jr., for injuries received when struck by an automobile. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Robinson & Lynch,* for plaintiff.

*J. T. Hammond,* for defendant.

SHARPE, C. J.   Plaintiff brought an action against defendant to recover damages for being struck by a motor vehicle owned and operated by defendant.

The accident occurred in the downtown section of Benton Harbor on April 1, 1939, at about the hour of 1 a.m.  Defendant was driving east on Territorial road and had driven about seven blocks on the same street when the accident happened.  Plaintiff was engaged in crossing Territorial road in the middle of the block.  At the point of the accident the street is approximately 60 feet wide from curb to curb. There were cars parked at about a 45-degree angle along the south side of the street.  The street was lighted by curb post lights.  Plaintiff proceeded in a northerly direction, walked between two parked cars on the south side of the street.  When halfway between the parked cars, he looked to the left and saw nothing approaching.  He continued to look to the left until reaching a point about two feet beyond the rear of the parked cars, when he stopped. He then looked to the right and proceeded four feet further.  At this point a car, traveling 15 to 20 miles per hour, was approaching from his right.  While waiting for this car to pass, plaintiff again looked to the left and saw nothing approaching and as soon as the car approaching from his right passed, plaintiff started forward, but before completing his first step he was struck by the automobile of defendant which was approaching from plaintiff's left at a

speed in excess of that prescribed by statute (1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933 [Comp. Laws Supp. 1935, § 4697, Stat. Ann. § 9.1565]). As a result of the accident, plaintiff sustained two broken legs and other serious injuries.

The cause came on for trial and at the close of plaintiff's case, defendant moved for a directed verdict upon the theory that plaintiff was guilty of contributory negligence. This motion was denied. A jury rendered a verdict in favor of plaintiff for the sum of $2,500. Defendant then moved for judgment *non obstante veredicto*. This motion was also denied.

Defendant appeals. In our consideration of this case, the testimony must be viewed in the light most favorable to plaintiff. Under plaintiff's theory of the case, defendant was operating his car in excess of 30 miles per hour in the nighttime without the same being lighted. Under authority of *Lett* v. *Summerfield & Hecht,* 239 Mich. 699, defendant was guilty of negligence in the operation of his car. The principal question in this case may be stated as follows: Was plaintiff guilty of contributory negligence as a matter of law? Defendant urges that plaintiff did not make sufficient observations before and while crossing the street and his actions in the premises make him guilty of contributory negligence as a matter of law.

It is undisputed that plaintiff looked to his left at least twice before being struck by defendant's car. Plaintiff testified as follows:

"*Q.* And then after proceeding between these parked cars, what did you do?

"*A.* Well, I got out about halfway between the parked cars and having peddled milk for about five years, it come natural to look up through the glass to see if a light reflecting through the glass and

I saw none and I continued looking to my left through the cars as I walked out and when I walked into the street I still didn't see any. As it opened up and come to a stop, I stepped about two feet from the car I should say.

"*Q.* And how far from the curb were you?

"*A.* I was about 20 feet, and then I seen there was nothing coming so I turned my head to the right and then proceeded to a point about 24 feet from the south curb and as I looked to my right there was a car coming down the hill, I'd say about halfway down which would be about 200 feet from where I was standing and the light was changing, it had an amber color, and he was slowing down, this fellow coming down the hill that had the amber color, and just as he got just about to a stop which I'd say he dropped the car into second and the light flashed green, he came on through. Then I turned around then and looked to my left again. I didn't see a thing then. Then I turned around and looked to the right again and the car I'd say was about 12 or 15 foot to my right yet coming through so I waited until this car passed me and went to take my step I'd say the fellow was by coming from the east about 12 feet from me at the time I went to take my step and at that point I don't remember anything else.

"There was a line mark through the center of the street and I would say the line was about 30 feet from either curb, approximately. In my opinion the speed of the car coming down Morton Hill was between 15 and 20 miles per hour."

Plaintiff also testified that he watched the car coming from his right for a distance of 200 feet; and that this car went past him 12 to 15 feet when he was struck:

"*Q.* And how much time elapsed between seeing the car coming from the right at the base of Morton Hill until it passed you?

"*A.*  Well, he had to travel approximately 200 feet there and had to slow down almost to a stop, then dropped his car into second and then came through under the light as it turned green from the amber.  I would say, 12, 15 miles an hour when he passed me, that's the speed when he passed me, but I wouldn't say how much time it took him to come through the light.  That's very hard to judge.''

In *Carter* v. *C. F. Smith Co.*, 285 Mich. 621, we said:

"A pedestrian seeking to cross a street must make reasonable use of his senses of sight and hearing.  *Molda* v. *Clark*, 236 Mich. 277.  The drivers of motor vehicles have no monopoly of the use of the streets and highways.  The rights of pedestrians and of the drivers of motor vehicles in the use of public streets and highways are substantially the same.  Each must use them with due regard for the rights of the other.  A pedestrian attempting to cross a busy street or highway must frequently wait for traffic coming one way to pass him, then go to the middle of the street and wait for traffic coming from the opposite direction to pass him, and if he does so he is not guilty of negligence as a matter of law.  *Bosma* v. *Daniels*, 250 Mich. 261.  Such pedestrian has a right to assume that the driver of a motor vehicle will not run him down and that such motor vehicle driver approaching will give proper warning signal indicating his approach.  *Reynolds* v. *Knowles*, 223 Mich. 70.  Plaintiff was not guilty of negligence as a matter of law in standing in the middle of the street in question waiting for southbound traffic to clear.''  (P. 625.)

See, also, *Patterson* v. *Wagner,* 204 Mich. 593; *Perkins* v. *Holser,* 213 Mich. 579.

In our opinion, plaintiff was not guilty of contributory negligence as a matter of law.  He had a right to expect that any car approaching from his left would be properly lighted and would not be

traveling in excess of the speed limit. The observations made by plaintiff in crossing the street were such that the issue of his negligence was a question of fact and properly submitted to the jury.

The judgment of the trial court is affirmed, with costs to plaintiff.

BUSHNELL, BOYLES, CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.