SAUNDERS *v.* JOSEPH.

1. APPEAL AND ERROR—JUDGMENT NON OBSTANTE VEREDICTO—EVIDENCE.

In reviewing trial court's decision denying defendant's motion for judgment *non obstante veredicto,* the facts are viewed most favorably to plaintiff.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

The questions of negligence and contributory negligence are not determined by precise rules of science or experience and every doubt should be solved by verdict of a jury.

3. AUTOMOBILES—INTERSECTIONS—NEGLIGENCE—RIGHT OF WAY.

When a motorist first reaches an intersection under such conditions of relative distances and speeds as would induce a reasonably prudent man to believe he could cross in safety, he is not guilty of negligence in proceeding, and in forming such belief the motorist may assume that others will use due care and accord him his legal rights.

4. SAME—INTERSECTIONS—CONTRIBUTORY NEGLIGENCE—RECORD.

Northbound plaintiff motorist who saw westbound defendant's car approaching from right when plaintiff was 50 feet and defendant 100 to 150 feet from intersection of two streets of equal importance was not guilty of contributory negligence as a matter of law where record shows the parties continued on their respective courses until plaintiff was across intersection and car was some 5 or 10 feet north of north line of street on which defendant had been driving when defendant collided with right side of plaintiff's car after turning corner, such question being for jury under record presented.

Definition of contributory negligence and its relationship to negligence, see 2 Restatement, Torts, § 463. For standard of conduct required of plaintiff, see 2 Restatement, Torts, § 464. For functions of court and jury on issue of contributory negligence, see 2 Restatement, Torts, §§ 475, 476.

Questions of negligence cannot be determined by precise rules in even the most usual situations, see 2 Restatement, Torts, § 285 and comment d. On right to assume that others will obey rules of conduct prescribed by law, absent reason to know that rule is habitually violated or that a particular person is about to violate it, see 2 Restatement, Torts, § 290 and comment n. Factors in determining question of negligence of plaintiff's conduct, see 2 Restatement, Torts, § 289.

5. APPEAL AND ERROR—CREDIBILITY OF WITNESSES—WEIGHT OF EVI-
DENCE.
    The credibility of witnesses and weight to be given their
    testimony were for the jury where controlling question was
    one for their consideration.

Appeal from Tuscola; Cramton (Louis C.), J.
Submitted January 13, 1941. (Docket Nos. 31, 32,
Calendar Nos. 41,824, 41,825.) Decided February 11,
1942.

Separate actions of case by Fred Saunders and
Eveline Saunders against John Joseph and William
Joseph for damages resulting from an automobile
accident. Cases consolidated for trial. Verdict and
judgment for plaintiffs. From denial of motion for
judgment *non obstante veredicto,* defendants ap-
peal. Affirmed.

*Robert E. Plunkett* and *Baies Wills,* for plaintiffs.

*M. W. Bush* and *Carl H. Smith* (*George J. Cooper,*
of counsel), for defendants.

STARR, J. These two cases, consolidated for trial
and appeal, involve an automobile accident occurring
about 5:15 o'clock on the afternoon of December 26,
1939, on Melbourne street just north of the inter-
section of Melbourne and Berkeley streets in the city
of Flint.

Such intersection was located in a residential
neighborhood. Both streets were paved, were 26
feet wide from curb to curb, and were of equal im-
portance, neither being a through street. Melbourne
street extended north and south, and Berkeley street
extended east and west. The curbs at the four
corners of the intersection were curved, having a
10- or 12-foot radius, so that both streets were open
and bell-shaped at the intersection. The day was
clear; the streets were dry; and, though it was

"getting dusk," each driver could see the other approaching the intersection.

Plaintiff Fred Saunders, a resident of Flint and familiar with the intersection, accompanied by his wife, plaintiff Eveline Saunders, was driving his Ford sedan north on Melbourne street and was approaching the intersection. They were on their way to visit their married daughter who lived a few blocks from where the accident occurred. Saunders was driving at a speed which he estimated at 15 to 20 miles, and which defendant William Joseph estimated at 35 to 40 miles, an hour.

Defendant William Joseph, 22 years old, accompanied by another young man, was driving a 1933 Chevrolet car, owned by his father, defendant John Joseph, west on Berkeley street and was approaching the intersection with Melbourne street at a speed which he estimated at 25 to 28 miles, and which plaintiff Fred Saunders estimated at 30 to 40 miles, an hour. Defendant driver was on his way "to pick up my girl friend who lived on Berkeley about the third house west of Melbourne."

A collision occurred on Melbourne street about "5 or 10" feet north of the north line of the intersection. Defendant driver had turned off Berkeley street to the right (north) on Melbourne street and struck plaintiff Saunders' car at about the center on the right side. Plaintiff Fred Saunders sustained minor personal injuries and some damage to his car. Plaintiff Eveline Saunders sustained severe and permanent injuries, was confined in the hospital and at home for several months, and at the time of trial, about 17 months after the accident, had only limited use of her left arm, leg, and side.

Plaintiff Fred Saunders began suit to recover for his personal injuries, for damages to his car, and for hospital, medical, nursing, and other expenses resulting from his wife's injuries. Plaintiff Eveline

Saunders began suit to recover for her personal injuries. Both plaintiffs alleged negligence on the part of defendant driver, William Joseph. Defendants filed answers denying negligence and charging Fred Saunders, as plaintiff in his case and as his wife's driver in her case, with contributory negligence. The cases were consolidated and tried before a jury. At the conclusion of plaintiffs' proofs defendants moved for directed verdicts, which motions were denied. Defendants did not renew their motions for directed verdicts at the conclusion of their proofs. The jury returned verdict of $2,328.78 for plaintiff Fred Saunders, and verdict of $2,000 for plaintiff Eveline Saunders. Judgments were entered on such verdicts. Defendants filed motion in each case for judgment notwithstanding the verdict and also motions for new trials. Such motions were denied, and defendants appeal.

No question is raised as to defendant driver's negligence. Defendants' counsel state in their brief:

"The case is in the Supreme Court for review of the denial of defendants' motion for judgment notwithstanding the verdict. The motion for a new trial has been abandoned."

The statement of questions involved presents for review only one question: Was Fred Saunders, as plaintiff in his case and as driver for his wife, Eveline Saunders, in her case, guilty of contributory negligence as a matter of law?

Defendants contend that the testimony of plaintiff Fred Saunders establishes his contributory negligence. Plaintiff driver testified that, when he was about 50 feet from the intersection, he looked to his right (east) on Berkeley street and saw defendants' car approaching at a distance of "about 100 to 150 feet" from the intersection; that he judged defendants' car was going 30 to 40 miles an hour;

that he continued to watch defendants' car until he (plaintiff driver) had crossed the intersection; that he thought he could get across the intersection safely; that he continued at a speed of 15 to 20 miles an hour; that, when he reached the center of the intersection, defendants' car was about 50 feet away; and that, when he reached the north line of the intersection, defendants' car was about 10 to 15 feet away. Plaintiff Fred Saunders further testified:

"*Q.* And you proceeded on across?
"*A.* I proceeded on across. I figured I was going to clear him from hitting me.
"*Q.* Did it [defendants' car] slacken its speed any after that?
"*A.* No. * * *
"*Q.* Where was the front of your car at the time of the impact?
"*A.* The front of the car must have been at least 6 or 10 feet the other side [north] of the intersection.
"*Q.* Across the north curb of the north line of Berkeley if extended?
"*A.* Yes, sir. * * * After the accident the car that struck me was stopped headed the same way I was going 5 or 10 feet or so from the corner. His [defendant driver's] whole car was north of the intersection and facing north * * * on Melbourne."

On cross-examination plaintiff Fred Saunders further testified:

"*Q.* You were around 50 feet back [from Berkeley street] when you first looked to the right?
"*A.* Yes. * * *
"*Q.* Did you see a car coming at that time?
"*A.* Yes.
"*Q.* And how far away from the east curbline of Melbourne street to the east, was that car that you saw coming down Berkeley street?
"*A.* Down as far as the two little trees there, the first tree I saw him.

"*Q.* Tell me what that would be in feet?

"*A.* Be around about 150 feet I imagine. * * *

"*Q.* How fast was he traveling there as you saw him coming towards you?

"*A.* * * * I couldn't determine but I figured he was going somewhere between 30 and 40 miles an hour. * * *

"*Q.* You kept right on going?

"*A.* Yes.

"*Q.* And did you keep right on watching?

"*A.* I was watching him all the time. I didn't notice the speed until I come across the intersection, then I noticed. * * *

"*Q.* Did he slacken his speed at any time as he traveled that 150 feet?

"*A.* No.

"*Q.* Did you slacken your speed at any time as you traveled the balance of that 50 feet and reached the south curbline on Berkeley?

"*A.* No.

"*Q.* How far away from the center point of that intersection was this car that you saw coming from the right when you got up to this south curbline on Berkeley street?

"*A.* I should say about 100 feet back, or more. * * *

"*Q.* With the brakes you had on your car that day in what distance could you stop your car if you put them on going at a speed from 15 to 20 miles an hour?

"*A.* I could stop within 10 feet I suppose, between 10 and 20 feet. * * *

"*Q.* Did you make any effort to stop your car or slacken your speed when you got to the south line of Berkeley street?

"*A.* No. * * *

"*Q.* * * * How far did you get across Berkeley street when you got hit?

"*A.* I was across the intersection.

"*Q.* Well, were you completely out of Berkeley street?

"*A.* Yes. Maybe just the end of the car, the bumper might be there, but I was out of the intersection myself.

"*Q.* You were out of there entirely?

"*A.* Yes, sir.

"*Q.* With the whole length of your car. Did you notice this automobile [defendants'] turning there right as it got pretty close to you?

"*A.* No.

"*Q.* Did it turn to the right at any time?

"*A.* Yes.

"*Q.* Where was it as it turned to the right?

"*A.* Right at the corner, just before it hit me; came right after me. * * *

"*Q.* Why didn't you stop your car?

"*A.* Well, I was afraid of getting killed if I stopped probably. I figured I was out of the intersection. * * *

"*Q.* You tell me you didn't figure you had the right of way because that was the most traveled street there?

"*A.* Yes, I figured I had the right of way because I figured I was out of the intersection before he reached there."

On redirect examination plaintiff Fred Saunders testified:

"*Q.* There was nothing there between you and he to obstruct his view of you?

"*A.* Not a thing.

"*Q.* And I will ask you whether or not you assumed he would slacken his speed to permit you to cross?

"*A.* That is what I assumed he would do. * * *

"*Q.* At the time of the actual impact you think practically the entire length of your car was north of that curbline?

"*A.* Yes. * * * If he [defendant driver] had gone straight ahead on his own side of the street he might have just skinned my bumper. He didn't slacken his speed at any time that I observed."

Defendant driver, William Joseph, testified that he did not look to his left until within 10 or 15 feet from the intersection; that he did not apply his brakes until after the collision; that his back tires "were not very good  *  *  *  were fairly smooth;" that one brake was dragging.   Defendant driver further testified:

"*Q.* What did you do when you saw him [plaintiff driver] coming at the point you have indicated, and you were at the point you have indicated?

"*A.* Well, I figured it was too late to stop—I made a right-hand turn.

"*Q.* Why did you make a right-hand turn?

"*A.* I wanted to avoid a head-on collision.  *  *  *

"*Q.* And will you tell the jury where the impact between the two cars occurred?  *  *  *

"*A.* Right on the southeast corner or northeast corner, right where the cross is just about.

"*Q.* And how far to the north of the north curbline of Berkeley street would that be?

"*A.* Oh, about 5 or 10 feet.

"When I turned to the right on Melbourne street, Mr. Saunders' car did not turn one way or another. I hit his right front; my left side of my car or front end of my car hit his right side.  *  *  *

"*Q.* Well, anyway, you say that when you were back here 10 or 15 feet, from the intersection, and looked to your left the first time and saw this man coming from your left, that then you had no opportunity to put your brakes on?

"*A.* That is right.

"*Q.* Instead of that you turned north on Melbourne avenue?

"*A.* Yes, sir.  *  *  *

"*Q.* Now the only thing that stopped the progress of your car was the impact, hitting the side of the plaintiff's car, isn't that right?

"*A.* No, sir.

"*Q.* What else stopped it?

"*A.* After I made the turn I put my foot on the brakes, clutch before.

"*Q.* Didn't you testify here twice that you didn't put your brakes on at all?

"*A.* I didn't attempt to put the brakes on before I hit him because I couldn't make the turn.

"*Q.* You say you put your brakes on after you hit him?

"*A.* Yes."

Under the testimony presented, was plaintiff Fred Saunders guilty of contributory negligence as a matter of law? The trial court's opinion denying motion in each case for judgment *non obstante veredicto* stated, in part:

"It was agreed by the two drivers concerned in this case, that the collision did not actually take place in the intersection but did take place north of the intersection. It was admitted expressly by the defendant driver that believing that a collision was inevitable, he drew off to the right and then followed plaintiff's car in the direction the plaintiff's car was going, as I remember north on Melbourne.
* * *

"And the collision took place on Melbourne just out of the intersection. That, in the opinion of the court, that is a question for the jury to consider as to the question of contributory negligence on the part of the plaintiff driver. He had made his observation, and his statement as to what he did and saw before the jury. It seems to the court, it was for the jury to determine whether he used due care in entering the intersection and crossing the intersection as he did. The jury might properly take into consideration the fact that in his estimation and speed of the cars and their position and so forth, the distance to be traveled, whether he came to a reasonable conclusion, in view of the fact he actually had crossed the intersection, when the defendant's car, without slackening its speed at all, followed him into Melbourne street north and struck him there.

That was not a question for the court to determine; it was for the jury.''

In reviewing the trial court's denial of defendants' motions for judgment *non obstante veredicto,* we view the facts most favorably to plaintiffs. *Stephens* v. *Koprowski,* 295 Mich. 213; *Shank* v. *Lucker,* 296 Mich. 705.

''We know of no rule of science or of experience by which the question of negligence or contributory negligence can be determined with exactitude.'' *Rife* v. *Colestock,* 297 Mich. 194, 197.

''It is an impossibility to lay down precise rules by which we may measure all acts of contributory negligence.'' *Thompson* v. *Michigan Cab Co.,* 279 Mich. 370, 373.

''Little help is afforded by cases, with their varying facts, and the doubt should be solved by verdict of a jury.'' *Lefevre* v. *Roberts,* 250 Mich. 675, 678.

The question is: Did plaintiff driver exercise that degree of care and caution that a prudent and careful person would have exercised under similar circumstances?

The testimony of plaintiff driver indicates that he was ever watchful of defendants' approaching car; that he (plaintiff driver), having entered the intersection first, had the right of way; that he was driving at a reasonable and proper rate of speed; that he formed a conclusion that he could safely cross the intersection; that, when he reached the center of the intersection and had 13 feet (half the width of the street) to go, defendants' car was about 50 feet away; that, when he reached the north line of the intersection, defendants' car was 10 to 15 feet away; that he safely passed out of the intersection, which confirmed his conclusion that he could cross in safety; and that, when he reached a point ''5 or

10'' feet north of the intersection, his car was struck on the right side by defendants' car.

Defendant driver's testimony reasonably established that he was exceeding the speed limit; that he failed to make proper observation; that his brakes were defective; that he intended to proceed west on Berkeley street; that, as he explained, he made a right-hand turn (north) on Melbourne street "to avoid a head-on collision;" that the collision occurred on Melbourne street "about 5 or 10 feet" north of the intersection.

The testimony also reasonably established that, if defendant driver had proceeded straight ahead (west) on Berkeley street, the collision would probably not have occurred.

The facts of the several cases cited by defendants' counsel distinguished them from the present case. In such cited cases the collision occurred within the intersection. In the present case the collision occurred outside the intersection and after plaintiff driver had safely proceeded through the intersection.

We have repeatedly recognized the rule that, when a driver reaches an intersection in advance of another and under such conditions of relative distances and speeds as would induce in a reasonably prudent man the belief that he could cross in safety, he is not guilty of negligence in proceeding, and that in forming such belief the driver may assume that the other will use due care and accord him his legal rights. *Kiefer* v. *Fink,* 236 Mich. 274; *Pline* v. *Parsons,* 231 Mich. 466; *Grodi* v. *Mierow,* 244 Mich. 511.

In *Scurlock* v. *Peglow,* 263 Mich. 658, 663, Mr. Justice NORTH said:

"As plaintiff entered the intersection, he made an observation which reasonably assured him there was no traffic approaching from the north within at least the 100 feet of his range of vision, and as to

more distant approaching traffic plaintiff, being first in the intersection, had the right of way and had no warning that such right would not be respected."

Our decision in the recent case of *Stephens* v. *Koprowski, supra,* involving an intersection accident in which the facts were somewhat similar to the present case, affords us guidance in our consideration of the question of plaintiff driver's contributory negligence. In that case Mr. Justice But-zel, writing for the court, stated, pp. 215–217:

"The two streets are of equal importance. * * * Plaintiff's decedent was riding in a friend's car in a northerly direction on Lane avenue; defendant was driving in an easterly direction on Second street. The driver of the car in which decedent was riding testified that as he approached the intersection, he was driving about 15 miles per hour and that he maintained a continual watchfulness. Because of an obstructing building on the southwest corner, he did not see defendant's car until he was 20 to 25 feet from the intersection; defendant's car was then about 75 feet from the center of the intersection. The driver further stated that at this point he believed he was far enough up to the intersection to cross with safety before defendant's car would get there, and he accelerated in an attempt to make sure. It appears, or at least for the purposes of this appeal it must be assumed, that he might have been correct if defendant had continued in the same path straight across the intersection. However, defendant started to drive to his left of the center of the street and then turned north as though to follow the other car. When the crossing was half completed, deceased's driver applied the brakes in an unsuccessful attempt to avoid the collision. In the northeasterly quadrant of the intersection, defendant struck the left side of the car in which the deceased was riding. * * * The trial court submitted the case to a jury who found for plaintiff.

A motion for judgment *non obstante veredicto* was denied on the ground that deceased's host was not required to assume that defendant would swerve to the left in a northerly direction upon entering the intersection in an apparent effort to avoid a collision. * * *

"In the instant case, the driver, having only about one third of the distance to travel that defendant had before reaching the intersection, formed a judgment that he could cross with safety; we agree, as the trial court ruled, that he was not bound to assume that defendant, heading straight across, would change his course by swerving to the left and would strike in a part of the intersection that would otherwise be a place of safety. At least the conclusion that might be drawn from a consideration of all the facts was one upon which reasonable minds might differ, and therefore the trial court correctly ruled that it was for the jury to determine whether the driver of the car in which the deceased was riding acted with the prudence expected of him in proceeding as he did."

See, also, *Thompson* v. *Michigan Cab Co., supra; Sak* v. *Waldecker,* 256 Mich. 219; *Swainston* v. *Kennedy,* 253 Mich. 518; *Hale* v. *Rogers,* 244 Mich. 69; *Arvo* v. *Delta Hardware Co.,* 231 Mich. 488.

In the case at hand plaintiff driver was not required to assume that defendant driver, proceeding straight west on Berkeley street, would change his course by turning to the right (north) on Melbourne street.

A careful study of the record convinces us that plaintiff driver was not guilty of contributory negligence as a matter of law. We are satisfied that the trial court was correct in concluding that the testimony presented a question of fact for the jury.

The credibility of the witnesses and the weight to be given the testimony were for the jury. *Rodgers* v. *Blandon,* 294 Mich. 699.

The judgments for the plaintiffs in both cases are affirmed, with costs in only one case.

Chandler, C. J., and Boyles, North, Butzel, Bushnell, and Sharpe, JJ., concurred. Wiest, J., did not sit.