## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

### FOWLER v. MOSHER.

#### September 20th, 1888.

1. NOTICES—*Mode of service—Waiver—Quære.*—By § 3207, Code 1887, providing that notices may be served by delivering copy to "a member of the family" of the person to be notified.

HELD:

> Delivery to "a mere boarder, a stranger to his blood," is not sufficient; and appearing and contesting validity of service is no waiver of defect of notice.
>
> *Quære* whether delivery to a servant of person to be notified is sufficient service.

2. IDEM—*Return—Home—Place of abode.*—By § 3207, Code 1887, return stating that person to be notified was "not at home";

HELD:

> Sufficient to authorize service upon member of his family.

3. SPECIAL TERM—*What tried at.*—By § 3262, Code 1887, providing that any cause ready for hearing may, with consent of parties, be heard;

HELD:

> The court cannot, at such term, *without* such consent, hear demurrer to bill or dissolve injunction.

Appeal from decree of circuit court of Amherst county, entered at special term, August 9th, 1888, in cause of Frederick Fowler against Israel Mosher, S. J. Hess and others, deciding demurrer to bill and dissolving injunction without consent of the parties.

*Fitzpatrick & Gordon, W. G. Loving,* and *B. R. Harrison,* for the appellants.

*Coghill & Berry,* for the appellees.

HINTON, J., delivered the opinion of the court.

The bill was filed in this case to enforce the specific execution of an alleged contract of purchase of an undivided moiety of a tract of land in Amherst county, and to enjoin the judgment of the county court of Amherst, which had been entered in an action of unlawful detainer, brought by the appellee, Mosher, against the appellant, Fowler; and the bill of the appellant prays that, in the event the court should decline to specifically execute the contract, that it will enforce the lien for the unpaid purchase money reserved in the deed from himself to the appellee, S. J. Hess, who had previously purchased the farm from him.    Upon the presentation of this bill, on the 11th July, 1888, an injunction was awarded by the Honorable Charles P. Latham, judge of the corporation court of Lynchburg, restraining the sheriff of Amherst county, and all others, from executing the judgment of the county court of Amherst in the unlawful detainer suit mentioned above.    On the 2d day of August, 1888, the defendants, Mosher and Hess, filed in the clerk's office of the circuit court of Amherst, where the bill had been filed, and to the judge of which court it was addressed, general demurrers to the whole bill, and a joint special demurrer to that portion of it which asked for specific execution of the alleged contract; and on the same day gave notice to plaintiff, Fowler, that they would, on the 8th day of August, 1888, that being the second day of a special term of Amherst circuit court, move said court to dissolve said order of injunction.    This notice, it is claimed, was not properly served; but on the 8th August, 1888, the plaintiff appeared and moved for a continuance of the cause for reasons set out in his affidavit, which we do not deem it necessary to state; and also made an affidavit impeaching the validity of the sheriff's return.    These motions were over-ruled, and thereupon the court proceeded to hear the case upon the bill and exhibits, and the demurrers, general and special, and made a decree dissolving the injunction, sustaining the

demurrer to what is called "the first ground of complaint of the plaintiff's bill;" that is, to so much of the bill as seemed, in the opinion of the court, to entitle the plaintiff to an action at law for damages, but without prejudice to his rights in that behalf; and also sustaining the demurrer to that portion of the bill which asked for specific execution of the alleged contract of purchase; and overruled the demurrer to so much of the bill as asked for the enforcement of the lien for the unpaid installments of purchase money, in the event of the court's refusal to decree specific execution of the contract, to which we have before adverted.

From this decree the present appeal is taken; and from this statement of the case it will be seen that the first question to be determined by this court must be as to the sufficiency of the service of notice for the dissolution of the injunction, and the appointment of a receiver. Was, then, the notice legally served? With reluctance we are compelled to say that it was not. The mandate of the statute is peremptory. It could only have been served in this case, under the express words of the statute (section 3207, Code Va. 1887), "by delivering a copy thereof in writing to the party in person; or, if he could not be found at his usual place of abode, by delivering such copy, and giving information of its purport to his wife, or any person found there, who is a member of his family, and above the age of sixteen years." In this case, the notice was served by the deputy-sheriff, and the return is as follows: "Executed August 2, 1888, by leaving with Mrs. Pierce a true copy of the within notice, she being over the age of sixteen years old, and explaining the purport of the same; she being a member of the said F. H. Fowler's family, and he not being at home." Now, in *Smithson* v. *Briggs*, 33 Gratt. 180, this court held that the word "residence," that being the word used in the return, was synonymous with the words "his usual place of abode"; and so here, we think, we may hold as to the word "home," used in this return. But was Mrs. Pierce a member of the plaintiff's family within the meaning of the

statute? We think not. In the affidavit of the appellant, which is not controverted, it is shown that she was a stranger to his blood, and a mere boarder in his house. Obviously, it was not the intention of the statute that service upon such a person should be regarded as a legal service of a notice. Its purpose was to require service upon some person who would feel interested by the ties of consanguinity, and the relation of dependence, to communicate the fact of the service to the party for whom it was designed. Such motives cannot be predicated of a mere boarder, who may or may not be inimical to the party for whom the notice is intended, and who may be there to-day and away to-morrow. Lexicographers, indeed, give to the word "family" the enlarged meaning it has in general use—that is, of a collective body of persons who live together in a house, or under one head; but this is not the legal meaning of the word. In 1 Bouv. Law Dict. 512, it is said: "Family—Domestic relatives. In a limited sense it signifies the father, mother and children. In a more extensive sense it comprehends all the individuals who live under the authority of another, and includes the servants of another." It was in this legal and restricted sense (whether that includes servants we do not decide) that the word was, in our opinion, used in the statute; and we therefore hold that the service was not sufficient. Nor can the appellant's rights be held to have been in anywise affected or prejudiced by his appearing and contesting the service, for his conduct is utterly inconsistent with a waiver; and although it may be said that in this case the appellant had actual notice of the service of process, and that the object and purpose of the law has been accomplished, yet this is fully answered, in our judgment, by the fact that it has not been done in the mode prescribed by law; and a different construction would lead to this absurd result: that a person might be deprived of legal rights by his taking the only course left open for his assertion of them. A construction that leads to such a conclusion obviously cannot be sound. This disposes of the motion for a dissolution of the injunction and the appointment of a re-

ceiver. The initial step had not been taken, and the case was not in a condition for a determination of these questions.

It is equally plain that the court had no right to try and determine the cause upon the demurrers. The statute (sec. 3062, Code) provides that, at a special term, "any civil cause may be tried which could lawfully have been, but was not, tried at the last preceding term that was or should have been held; * * * and any cause or matter of controversy, at law or in chancery, then ready for hearing, or which may be made ready by consent of parties, may, with the consent of the parties to such cause or controversy, be heard and determined, although it could not lawfully have been heard at the preceding term that was or should have been held." By the terms of this statute the "consent of parties" is required, as well in the case where the cause is ready as when it may be gotten ready; and as, therefore, there is an entire absence of consent in this case, although it might be, and indeed was, otherwise ready to be heard, so far as the demurrers were concerned, the court was without authority to enter the decree it did. It follows that the decree is erroneous, and must be reversed; the injunction must be reinstated; and the cause must be remanded, to be regularly proceeded in to final decree.

DECREE REVERSED.