ROGERS v. KUHNREICH.

Motor Vehicles—Nephew Merely Rooming With Defendant Not Member of Family—Statutes.

Defendant's nephew, who roomed in an apartment occupied by defendant and his estranged wife and paid her rent for his room, was not a member of defendant's family within the meaning of 1 Comp. Laws 1915, § 4825, creating conclusive presumption that when automobile was being driven by member of family it was by owner's consent, rendering him liable for injuries thereby negligently inflicted.

Error to Livingston; Collins (Joseph H.), J. Submitted April 2, 1929. (Docket No. 15, Calendar No. 33,019.) Decided June 3, 1929.

Case by Marilda Rogers against Henry Kuhnreich and another for personal injuries. From a judgment for plaintiff, defendant Kuhnreich brings error. Reversed and new trial ordered.

*Birt E. Hulburt* and *Francis J. Shields* (*Don W. Van Winkle,* of counsel), for plaintiff.

*Stevenson, Butzel, Eaman & Long (Chas. A. Wagner, of counsel), for defendant.*

FELLOWS, J. Defendant and his wife, although estranged and no longer sustaining marital relations, occupied together an apartment in Detroit. Defendant did not take his meals there. He and his brother ran a tire business on Michigan avenue and a real estate office in the Majestic building. They had a nephew named Theodore Moller in Vienna, Austria. By correspondence conducted by the brother, it was arranged that Theodore, who could speak English, should come over and work in the tire shop. He came and was paid $25 a week; he was around 20 or 21 years old. He lived at the apartment of defendant; for a time he took some of his meals there, but later only had a room. When he took some of his meals there he paid defendant's wife $10 a week, and when he only had the room and took his meals elsewhere, he paid her $5 a week.

Defendant owned and had for his personal use a Rickenbacker sedan. He left for Europe January 2, 1924. He did not return until April. Before leaving he canceled his insurance on the automobile, took it out of live storage and placed it in dead storage. No one had any authority to use it during his absence. It was taken out by some one without authority from the garage owner, or, so far as the record discloses, from anyone else, in February, and was reported as stolen to the police department. While being driven on the Packard road between Ann Arbor and Detroit on February 10th, it collided with a car in which plaintiff was riding, and she was injured. We very much doubt if the facts we are about to relate are established by competent evidence, but, for the purposes of the case, we will as-

sume they are. The car was being driven by Theo-
dore Moller, who was accompanied by defendant's
wife and some of her relatives, and was negligently
operated by him.

Plaintiff's recovery was predicated on 1 Comp.
Laws 1915, § 4825, which was in force when the accident
occurred, but which has been superseded by
Act No. 56, Pub. Acts 1927. The validity of the section
was sustained in *Bowerman* v. *Sheehan,* 242
Mich. 95, and we are here concerned only in its construction.
That portion of the section which is here
involved reads as follows:

"In the event said motor vehicle is being driven
at the time of said injury by the father, mother,
brother, sister, son, daughter, or other immediate
members of the family of the owner of said motor
vehicle, then it shall be conclusively presumed that
said motor vehicle is being driven by the consent or
with the knowledge of such owner."

The trial judge held as matter of law that young
Moller was an immediate member of defendant's
family and defendant was liable for the young man's
negligence in operating the car on the occasion in
question and under the circumstances here disclosed.

The word "family" is one of great flexibility. In
*Carmichael* v. *Benefit Ass'n,* 51 Mich. 494, it was
said by Chief Justice Graves, speaking for the court:

"Now this word 'family,' contained in the statute,
is an expression of great flexibility. It is applied
in many ways. It may mean the husband and wife
having no children and living alone together, or it
may mean children, or wife and children, or blood
relatives, or any group constituting a distinct domestic
or social body. It is often used to denote a
small select corps attached to an army chief, and

has even been extended to whole sects, as in the case
of the Shakers.

"We discover nothing in the statute implying a
narrow sense, and we should not be inclined to at-
tribute one where the result would cause injustice."

The word as used under different circumstances
has received different constructions. When used in'
life insurance policies and in homestead and other
exemption statutes, it has been given a broad con-
struction, and, in so doing, the intent, either of the
parties to the contract or the legislature, has been
carried out and no injustice has been done. Here
we have a statute in derogation of the common law,
and under one well-recognized rule of construction
should be strictly construed. It also enumerates
relationships followed by other cases enumerated in
general terms, and under another well-recognized
rule of construction such other cases must be under-
stood to be cases of the same general character, sort,
or kind with those named. *Jacobs* v. *E. Bement's
Sons,* 161 Mich. 415, and cases there cited. To hold
that the statute should be construed to be applicable
to cases of the character of the one before us mani-
festly would work an injustice. Webster includes
boarders and lodgers as members of the family, but
such definition has been negatived so far as this
court is concerned by what was said in our recent
case of *Seeley* v. *Phi Sigma Delta House Corp.,* 245
Mich. 252. Other courts have definitely declined to
include them as members of the family. *Strawn* v.
*Strawn,* 53 Ill. 263; *Weed* v. *Dayton,* 40 Conn. 293;
*Fowler* v. *Mosher,* 85 Va. 421 (7 S. E. 542); *White-
head* v. *Nickelson,* 48 Tex. 517; *Golden Cross* v.
*Donaghey,* 75 N. H. 197 (72 Atl. 419). In *Sheehy* v.
*Scott,* 128 Iowa, 551 (104 N. W. 1139, 42 L. R. A.

[N. S.] 365), it was said by Mr. Justice Ladd, speaking for the court:

" 'Family' has been defined as a collective body of persons who live in one house under one head or manager. *Tyson* v. *Reynolds,* 52 Iowa, 431 (3 N. W. 469); *Parsons* v. *Livingston,* 11 Iowa, 104 (77 Am. Dec. 135). But this is not accurate, for strangers might thus band themselves together and live under the direction of a leader. To constitute one or more persons, with another, living together in the same house, a family, it must appear that they are being supported by that other in whole or in part, and are dependent on him therefor, and, further, that he is under a natural or moral obligation to render such support."

And the same court in the later case of *Mooney* v. *Canier,* 198 Iowa, 251 (197 N. W. 625), held that the defendant, head of the family, could not be held liable under the "family use" doctrine for an injury done by his automobile when driven by his stepson who had roomed and boarded at his house, paying therefor $8.00 a week. In *Town of Cheshire* v. *Town of Burlington,* 31 Conn. 326, where a statute dealing with the settlement of paupers was involved, the court said:

"The intention of the legislature we think was, by this term 'family' to designate all individuals whom it was the right of the head of it to control, and his duty to support."

In *Roco* v. *Green,* 50 Tex. 483, it was said:

"We deduce from the authorities the following general rules to determine when the relation of a family, as contemplated by law, exists:
1. It is one of social status, not of mere contract.
2. Legal or moral obligation on the head to support the other members.

3. Corresponding state of dependence on the part of the other members for this support."

In part, plaintiff relies on our cases dealing with the word "family" as found in the workmen's compensation law (2 Comp. Laws 1915, §§ 5423–5495, as amended). Three of our cases deal specifically with this word: *Roberts* v. *Whaley,* 192 Mich. 133 (L. R. A. 1918A, 189); *Lewis* v. *Eklund Bros. Co.,* 244 Mich. 22; *Holmberg* v. *Cleveland-Cliffs Iron Co.,* 219 Mich. 204. The first two of these cases involved illegitimate children whom the deceased workmen owed a legal duty to support. In the last case, for 27 years the deceased workman had maintained a home for a blood relative and her children whom it was found he owed a moral duty to support. It will be quite difficult to find cases under workmen's compensation acts which, as ours, use the word "family" which hold that family relations exist, unless there is also found to exist either a legal or moral obligation to support resting on the head of the household.

In each of the two cases involving the validity of the section before us (*Hawkins* v. *Ermatinger,* 211 Mich. 578, and *Bowerman* v. *Sheehan, supra*), the driver was the minor son of the owner. In the *Hawkins Case,* it was stressed that the head of the family had absolute dominion over the car, and it was said:

"The owner of such a vehicle has complete dominion over it and the absolute right of control thereof. He may, if he will, retain its possession and so prevent its use by persons other than careful, experienced operators."

While in the *Bowerman Case* his control over the immediate members of his family, in that case a minor son, was also stressed, and it was said:

"In my opinion, this law should be sustained as a valid exercise of the police power upon the broad principle that he who owns property, in its nature a dangerous instrumentality when recklessly operated, will not be permitted to suffer it to be handled by a member of his immediate family, *over whom he has full control,* in such a negligent manner as to inflict injury upon another without responding in damages therefor."

We are not persuaded that we should construe the words "immediate members of the family," as used in this statute, to include a boarder or roomer who is paying for such board or room, even though he be a collateral relative. It follows that the judgment for plaintiff must be reversed, but, as the Empson act (3 Comp. Laws 1915, § 14568) was not invoked, we must grant a new trial. Defendant will have costs of this court.

North, C. J., and Fead, Wiest, Clark, McDonald, Potter, and Sharpe, JJ., concurred.