LATHAM v NATIONAL CAR RENTAL SYSTEMS, INC

Docket No. 203966. Submitted November 10, 1999, at Detroit. Decided January 11, 2000, at 9:05 A.M.

Carmen Latham, a minor, by her next friend, Shandra Perry, and two other minors, by their next friends, brought an action in the Wayne Circuit Court against National Car Rental Systems, Inc., Wanda Watkins, Rondal Rucker, and Karega Law Firm, P.C., seeking damages for injuries sustained by the plaintiffs when a van in which they were passengers collided with an automobile driven by Rucker and owned by Karega Law Firm, P.C. The van was owned by National and had been leased by Watkins. At the time of the accident, the van had been stolen and was being driven by a person who fled after the accident and was never found or identified. The van was originally stolen from Watkins by her nephew, an occasional visitor at her house, and was allegedly stolen from the nephew before the accident, which occurred when the driver of the van, a person only known to the plaintiffs as "D'Angelo" whom they had just met before being invited to go joyriding with him, failed to stop the van at a stop sign at an intersection. The court, James R. Chylinski, J., granted motions for summary disposition in favor of the defendants. The plaintiffs appealed.

The Court of Appeals held:

1. The evidence does not support the plaintiffs' claim that D'Angelo and Watkins' nephew are the same person. There is no evidence that D'Angelo was related to defendant Watkins or was an immediate member of her family. There was no genuine issue of material fact whether the van was being operated by an "immediate family member" of the lessee, which would be necessary to preserve the issue of defendants Watkins' and National's liability under the civil liability act, MCL 257.401 et seq.; MSA 9.2101 et seq. Summary disposition was properly granted in favor of Watkins and National.

2. Even if Watkins' nephew was driving the van at the time of the accident, he was not an immediate family member within the meaning of the civil liability act.

3. There is no substantial evidence to support the allegation that Rucker was negligent in the operation of his vehicle. Summary dis-

position was properly granted in favor of Rucker and Karega Law Firm, P.C.

Affirmed.

1. AUTOMOBILES — CIVIL LIABILITY ACT — NEGLIGENCE— IMMEDIATE FAMILY MEMBER.

2. NEGLIGENCE — AUTOMOBILES — SUMMARY DISPOSITION.

*Lakin, Worsham & Victor, P.C.* (by *Howard J. Victor* and *James S. Craig*), for the plaintiffs.

*Ward, Anderson, Porritt & Bila* (by *Daniel E. Morrisroe* and *David S. Anderson*), for National Car Rental Systems, Inc., and Wanda Watkins.

*Draugelis & Ashton, L.L.P.* (by *Taras P. Jarema*), for Rondal Rucker and Karega Law Firm, P.C.

Before: GRIBBS, P.J., and MURPHY and GRIFFIN, JJ.

GRIFFIN, J. Plaintiffs appeal as of right orders of the circuit court granting defendants' motions for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

I

This is a third-party personal injury cause of action arising out of a motor vehicle collision that occurred on July 5, 1995, at approximately 1:00 A.M., at a residential intersection. The facts of the case are truly bizarre. The three plaintiffs, who are minors, were passengers in a stolen van that was being driven by a person only known to plaintiffs as "D'Angelo," whom they had just met that afternoon. Plaintiffs were invited to go joyriding with D'Angelo and his friend. The accident occurred when the van collided with a BMW automobile driven by defendant Rondal Rucker. The BMW was owned by Rucker's employer, defend-

ant Karega Law Firm, P.C. (Karega). D'Angelo and his unknown friend fled the scene on foot after the accident and subsequently have not been found or identified.

Defendant Wanda Watkins leased the van from lessor defendant National Car Rental Systems, Inc. (National), on June 10, 1995.[1] Watkins was the only person identified as an authorized driver on the rental agreement. On June 29, 1995, she reported that the van had been stolen on the evening of June 24, 1995.

Defendant Watkins' nephew, Joe Watkins, Jr., was spending the night at defendant Watkins' home on the evening that the van was stolen because he did not have his own home or another place to stay. According to defendant Watkins, Joe was a drifter who slept wherever he could. He asked Watkins if he could stay the night and she agreed. Although defendant Watkins testified that she had not given Joe, or anyone else, permission to drive the van, both he and the van were missing the next morning.[2] Defendant Watkins called the police in the morning when she noticed that the van was missing, but because the suspect was a relative, she was advised to wait a few days in case he brought it back voluntarily; he did not, so she called the police again. Defendant Watkins testified that she did not see her nephew Joe again until some time after the accident, at which time Joe admitted taking the van but told her that someone else had then stolen it from him.

---

[1] According to the rental agreement, the vehicle was to be returned on June 12, 1995, but Watkins notified National that she needed to keep the van past that date for transportation purposes.

[2] When retrieved after the accident, the van showed no signs of forced entry.

II

Plaintiffs first contend that the trial court erred in granting defendants National's and Watkins' motion for summary disposition pursuant to MCR 2.116(C)(10). Plaintiffs allege that a genuine issue of material fact exists whether the van was being operated by an "immediate family member" of the lessee, thereby preserving the issue of defendants' liability under the civil liability act, MCL 257.401 *et seq.*; MSA 9.2101 *et seq.*, for injuries caused by the negligent operation of the vehicle. Plaintiffs' argument in this regard is grounded in their assertion that Joe Watkins, Jr., and D'Angelo are one and the same person.

This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). As explained by the *Maiden* Court, *id.* at 119-121:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion.
>
> *     *     *
>
> A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10). The court rule plainly requires the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial.
>
> . . . The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion. A reviewing court may not

employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules.

Further,

> [a] trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). [*Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).]

Resolution of the issue before us requires interpretation of language in the civil liability act, which imposes liability on the owner for an accident involving negligent operation of a vehicle by anyone operating it with the owner's express or implied consent. Section 401 of the act provides in pertinent part:

> (1) . . . The owner [of a motor vehicle] is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family.

> \*   \*   \*

> (3) Notwithstanding subsection (1), a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less is liable for an injury caused by the negligent operation of the leased motor vehicle *only* if the injury occurred while the leased motor vehicle was being operated by an authorized driver under the lease agreement *or by the lessee's spouse,*

*father, mother, brother, sister, son, daughter, or other immediate family member. . . .*

(4) A person engaged in the business of leasing motor vehicles as provided under subsection (3) shall notify a lessee that the lessor is liable only up to the maximum amounts provided for in subsection (3), and *only* if the leased motor vehicle was being operated by the lessee or other authorized driver *or by the lessee's spouse, father, mother, brother, sister, son, daughter, or other immediate family member,* and that the lessee may be liable to the lessor up to amounts provided for in subsection (3), and to an injured person for amounts awarded in excess of the maximum amounts provided for in subsection (3). [MCL 257.401; MSA 9.2101 (emphasis added).][3]

As previously noted, it is plaintiffs' contention that at the time of the accident, the van was being driven by an "immediate family member" of lessee Wanda Watkins—Joe Watkins, Jr.,—and, therefore, defendants National and Watkins are liable for their injuries pursuant to subsection 401(3) of the act. See, generally, *DeHart v Joe Lunghamer Chevrolet, Inc,* 239 Mich App 181; 607 NW2d 417 (1999).

However, our review of the record reveals a dearth of admissible evidence to support plaintiffs' claim that D'Angelo and Watkins' nephew are the same person. Apart from hearsay testimony that Joe Watkins, Jr., stole the van eleven days before the accident occurred and during that interim period the van was purportedly stolen from him, the only evidence regarding the identity of the person who was driving the National van at the time of the accident is plain-

---

[3] This 1995 version of the civil liability act, amended effective June 22, 1995, applies to the instant case because plaintiffs' cause of action did not arise until the date of the accident on July 5, 1995, after the 1995 amendment took effect. See *Hill v General Motors Acceptance Corp,* 207 Mich App 504, 513-514; 525 NW2d 905 (1994).

tiffs' testimony that his first name was D'Angelo. Plaintiffs did not know D'Angelo's last name, where he lived or worked, or how to locate him. All three plaintiffs indicated that the two males in the van were about seventeen or eighteen years of age. Plaintiffs gave varying descriptions of D'Angelo. Plaintiff Christa Porter described D'Angelo as having light brown skin, but remembered nothing else; plaintiff Carmen Latham said he was a black male about 5'7" or 5'8" and weighing 180 pounds, with a bald head, a mustache, one earring, and big teeth. Plaintiff Yvette Mayfield testified that he was 5'4", 130 pounds, and had short hair. By contrast, defendant Watkins described her nephew, Joe Watkins, Jr., as twenty-six or twenty-seven years old, about 5'7" and 155 pounds, light brown complexion, thin mustache, and hair cut in a low fade.

Advanced as a basis to support plaintiffs' theory that D'Angelo and Watkins nephew are the same person, these vague and varying physical descriptions constitute nothing more than conjecture and certainly do not lend credence to that theory. Moreover, there is no evidence that D'Angelo was related to defendant Watkins or that he was an immediate member of her family. Thus, any argument in this regard is purely speculative and insufficient as a matter of law to establish the existence of a genuine issue of fact regarding the unknown driver's identity. *Maiden*, *supra*. See also *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999); MCR 2.116(G)(4).

Even if we were to assume, for purposes of argument, that Joe Watkins, Jr., was driving the van at the time of the accident, we conclude that he was not an

"immediate family member" within the meaning of the act so as to render defendants liable thereunder.

The phrase "other immediate family member" is not expressly defined in the statute itself. However, interpreting identical language in a predecessor statute, our Supreme Court held that the nephew of a vehicle's owner who lived with the owner but paid room and board was not an immediate family member and, therefore, was not covered by the presumption of consent to use the vehicle. *Rogers v Kuhnreich*, 247 Mich 204, 205-210; 225 NW 622 (1929). The *Rogers* Court focused on the word "family," as opposed to the narrower phrase "immediate family," and noted that the term is one of "great flexibility" depending on context; however, in that instance, because the statute was in derogation of the common law, the Court stated that the statute should be narrowly construed. *Id.* at 206-207. Although the Court stressed the "boarder" status of the nephew instead of the parties' familial relationship, *id.* at 207, this emphasis was derived from the notion that "family" connotes more than merely a relationship based on degrees of consanguinity:

> " 'Family' has been defined as a collective body of persons who live in one house under one head or manager. . . . But this is not accurate, for strangers might thus band themselves together and live under the direction of a leader. To constitute one or more persons, with another, living together in the same house, a family, it must appear that they are being supported by that other in whole or in part, and are dependent on him therefor, and, further, that he is under a natural or moral obligation to render such support." [*Id.* at 208, quoting *Sheehy v Scott*, 128 Iowa 551; 104 NW 1139; 42 LRA(NS) 365 (1905).]

Influenced by this notion that "family" entails a legal or moral obligation on the head of the family to support the other members, and a corresponding state of dependence on the part of the other members for this support, *Rogers, supra* at 208-209, the *Rogers* Court was "not persuaded that we should construe the words 'immediate members of the family,' as used in this statute, to include a boarder or roomer who is paying for such board or room, even though he be a collateral relative." *Id.* at 210.

Although the payment of room and board is not a factor in the instant case, the definition of "family" that underscores the *Rogers* decision is still viable and pertinent to these proceedings. Joe Watkins, Jr., neither resided in defendant Watkins' house nor was a member of her household. According to defendant Watkins' undisputed testimony, her nephew was a drifter who "resides anywhere he can." Defendant Watkins testified that her nephew had not spent the night at her house since the evening when he took the van; on that particular evening, he stayed with her and slept on her sofa because "he had nowhere to go." Watkins testified that Joe Watkins, Jr., had spent the night on prior occasions, but these visits were sparse and unpredictable: "He lives where he can, so he might pop up, you know, any time. That was one of those nights where he asked me, one of those days he asked me if he could stay."

We cannot conclude, under these circumstances, that Joe Watkins, Jr., was an "immediate family member" within the meaning of § 401 of the civil liability act. Given the sporadic nature of his appearances at defendant Watkins' house and the consequent lack of a consistent pattern of reliance and support between

aunt and nephew, Joe Watkins, Jr., cannot be deemed to be a part of defendant Watkins' immediate family. The alleged liability of defendants is therefore foreclosed under MCL 257.401(3); MSA 9.2101(3).

For the above reasons, we conclude that the trial court did not err in granting summary disposition in favor of defendants Watkins and National pursuant to MCR 2.116(C)(10).

III

The trial court also granted summary disposition pursuant to MCR 2.116(C)(10) in favor of the operator of the BMW that collided with the van, defendant Rucker, and its owner, defendant Karega Law Firm. The trial court held that plaintiffs failed to present any evidence that defendant Rucker was negligent in the operation of his vehicle.[4] Plaintiffs contend on

---

[4] The trial court ruled with regard to the summary disposition motion as follows:

> There's no testimony that the defendant did anything wrong. You're just making up things saying that he came thought [sic] the—the Plaintiffs went through the stop sign, and the defendant should have been looking where they were. And because he should have been looking, he should have seen them. And because he should have seen them, he should have avoided it.
>
> And you're not taking into account the fact that a reasonable juror—and I'm not saying that this may or may not raise a question of fact, but if you're going through an intersection and there's a collision, plaintiff's [sic] car ends up wrapped around some pole, spun around and all that thing, a reasonable juror could find that that car was going pretty fast; that the defendant had no chance, even if he saw it, to do that.
>
> But what you have to show is something positively. Aver something that the plaintiff [sic] did that would make him at least a scintilla negligent. And you're saying that because he wasn't looking or because he maybe wasn't looking, and maybe he didn't avoid the accident, that that makes him negligent. I don't understand.

\*      \*      \*

appeal that summary disposition was improperly granted because a question of material fact exists regarding whether Rucker was in fact negligent in hitting the van; liability would correspondingly attach to defendant Karega under the owners' civil liability act, *supra*. We disagree.

"To establish a prima facie case of negligence, a plaintiff must introduce evidence sufficient to establish that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach was a proximate cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *Spikes v Banks*, 231 Mich App 341, 355; 586 NW2d 106 (1998). Only the second element is at issue in this case. The question whether a defendant has breached a duty of care is ordinarily a question of fact for the jury and not appropriate for summary disposition. *Id.* at 355. However, when the moving party can show either that an essential element of the nonmoving party's case is missing, or that the nonmoving party's evidence is insufficient to establish an element of its claim, summary disposition is properly granted:

> "First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." [*Quinto, supra* at 362, quoting *Celotex v Catrett*,

---

Just based on the facts in this case, I find that there really is no genuine issue of fact as to any negligence on the part of defendant driver.

477 US 317, 331; 106 S Ct 2548; 91 L Ed 2d 265 (1986) (citations omitted).]

In the instant case, there is no dispute that the van in which plaintiffs were riding had a duty to yield the right of way to the BMW automobile and stop at the stop sign at the intersection where the accident occurred. MCL 257.649(6); MSA 9.2349(6); *Leader v Straver*, 278 Mich 234, 236; 270 NW 280 (1936). In support of their motion for summary disposition, defendants Rucker and Karega submitted, among other things, a police report of the accident that indicated that the accident was caused when D'Angelo failed to yield the right of way at the intersection.[5] Rucker, who had the right of way, testified during his deposition that he saw the van's headlights briefly before it entered the intersection and then slammed on his brakes before striking it. According to Rucker, the van did not stop at the stop sign.

In response, plaintiffs noted plaintiff Mayfield's testimony that D'Angelo, the now absent and unidentified driver, looked both ways before entering the subject intersection. However, such testimony constitutes insufficient proof that Rucker was negligent and ignores Mayfield's further testimony that she did not see Rucker's vehicle before the impact and had no warning that an accident was about to occur. Mayfield was unable to provide any testimony regarding

---

[5] The police report submitted to the trial court without objection stated in pertinent part:

"Unit #1 [the van driven by D'Angelo] failed to stop at stop sign while traveling N/B on Flanders. Unit #2 [Rucker's BMW] traveling E/B collided with #1 at intersection. Final rest against utility pole."

Rucker's alleged negligence because she had no independent knowledge of how the accident happened.

Plaintiff Latham likewise was unable to give any specific details about the events of the accident and stated during her deposition that she had absolutely no knowledge of how it occurred. She stated: "I remember getting in the van. I don't remember nothing else." Similarly, plaintiff Porter testified during her deposition that she did not know who was at fault in the accident. Like plaintiff Latham, she could not give any specifics regarding how the accident happened ("No, I didn't see nothing. We pulled out and it just hit.").

The testimony of plaintiffs clearly establishes that they had no personal knowledge of any negligence on the part of defendant Rucker; they did not know how the accident happened, with the exception that D'Angelo pulled out into the intersection just before the impact. The record is otherwise devoid of any evidence that Rucker failed to drive his vehicle in a prudent manner, that he was negligent in its operation, or that his actions in any way caused the accident in question. Plaintiffs' suggestion that Rucker was traveling without his headlights on or at an excessive rate of speed is purely speculative and conjectural.

In *Skinner v Square D Co*, 445 Mich 153, 166; 516 NW2d 475 (1994), the Supreme Court quoted *Daigneau v Young*, 349 Mich 632, 636; 85 NW2d 88 (1957), in support of the following rule of law:

> "There must be substantial evidence which forms a reasonable basis for the inference of negligence. There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury. We cannot permit the jury to guess . . . ." [Citations omitted.]

On this record, there is not substantial evidence that forms a reasonable basis for the inference of Rucker's negligence. *Daigneau, supra* at 635-636.

For these reasons, we conclude that the trial court did not err in granting summary disposition in favor of defendants Rucker and Karega. Plaintiffs have failed to sustain their burden of opposing the motion for summary disposition with admissible evidence. MCR 2.116(C)(10) and (G)(4). See *Smith, supra.*

Affirmed.