*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EDITA RAMIC,

        Plaintiff-Appellee,

and

FAZLIJA SALI,

        Plaintiff,

v

BULLOCK ENTERPRISES, LLC, doing business as
BRADFORD SQUARE APARTMENTS,

        Defendant,

and

BRADFORD SQUARE CONDOMINIUM
ASSOCIATION,

        Defendant-Appellant.

UNPUBLISHED
February 1, 2022

No. 354374
Macomb Circuit Court
LC No. 2019-000020-NO

Before: CAVANAGH, P.J., and SHAPIRO and GADOLA, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent. The majority errs in several respects. First, it fails to follow the fundamental principle that in a motion for summary disposition, the evidence is to be taken in the light most favorable to the non-moving party. Second, it errs in concluding that the open and obvious doctrine bars plaintiff's common law claim despite the fact that the dangerous condition in this case is not subject to that doctrine because it presented a high likelihood of severe injury. Third, it erroneously concludes that defendant is not subject to the duty defined by MCL 554.139 despite the fact that plaintiff was a lessee. Fourth, the majority erroneously concludes that, even though condominium associations have a contractual duty to maintain the common areas of the building, they violate no legal duty by disregarding repeated complaints that the lights in the

-1-

building's common areas were not working, leaving a stairway from the second to the first floor in darkness.

## I. FACTS

Analysis of this case should begin with a review of the facts and it should go without saying that when we review motions under MCR 2.116(C)(10), we must consider "the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Liparoto Const, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). Despite this principle, the majority offers virtually no description of the evidence proffered by plaintiff, let alone review it in the most favorable light.

The evidence in support of plaintiff's cause of action is as follows. Plaintiff Edita Ramic lives on the second floor of a building housing eight units in a large, multi-building condominium project. She fell down a dark, unlit flight of 12 stairs leading from the second to the first floor and suffered significant injury. The project was managed by defendant condominium association, which had the responsibility to repair and maintain the common areas such as hallways and stairs. Residents were not permitted to make alterations to the common areas.

Plaintiff testified that when taking her first step down, she lost her footing because she was unable to see the location of the next step. Defendant disputes these factual claims, asserting that most of the lights were working and so the stairway was not dark and that they did not receive any complaints about the lack of lighting prior to plaintiff's injury.

In support of her version of events, plaintiff presents affidavits from several residents of the building attesting to the condition of the lighting and the complaints they made prior to plaintiff's fall.[1] Resident Anne-Marie Hickey averred:

> On the evening of September 3rd, 2018 my neighbor Edita Ramic[] fell down the stairs while heading to retrieve her mail. At the time of her fall there were no working lights in the common area of our building, 34501. The lights have been a constant issue in our building, always lights burnt out and most of the time complete darkness. I have been a resident of Bradford Square 35401 since 2006 and grounds has always been a problem, especially the lights. We consistently live in the dark for months at a time if not longer. It is a recurring problem. Due to this faulty upkeep of the lights in building 35401 Edita missed a step due to the darkness and fell down the whole flight of stairs. Other neighbors who live on the 2nd floor have had near misses of falling as well.

---

[1] All of these residents witnessed plaintiff laying on the ground after she fell down the flight of 12 stairs. Hickey specifically recalled that it appeared that plaintiff had "stopped breathing" and that "her husband performed CPR on her guided by the 911 operator."

According to a statement given by another neighbor, Alexis Mork:

> The hallway lights in the building had been out for about 2 months. . . . [Plaintiff's fall down the stairs] could have been avoided if our building maintenance had been well maintained. To add injury to insult, when the paramedics arrived they rudely asked, "Why no one . . . turn a light on?"

A third resident, Raydine Trulove, attested as follows:

> 5. At [the time of plaintiff's fall], the light had been burnt out in the common area and it was too dark to see the stairs.
>
> 6. Prior to that date, . . . I had contacted maintenance at Bradford Square Apartment, specifically, [Kevin Goodrich,] to inform him of the light being out in the hallway and that it was too dark to even see the stairs.
>
> 7. Maintenance never responded to my request to repair or replace the light.
>
> 8. Based upon myself previously requesting maintenance to repair or replace the light in the stairway, I can attest to the fact that the apartment complex had notice of this dangerous condition.

Truelove went on to explain that she called to complain about the lights on August 14, 2018, more than two weeks before the injury to plaintiff. Further, plaintiff's partner, Fazlija Salia, attested:

> 3. Prior to September 3, 2018[,] the lights had been burnt out for months in the common area of our building and at night it was too dark to see the stairs.
>
> 4. Prior to that date I had contacted our landlord for our unit, Wally Liebich, and informed him that the lights were out and that it posed a dangerous situation. He said he would let maintenance people for the building know. When the lighting problem was not taken care of, I again complained to Mr. Liebich who said he had told someone from the maintenance department about the problem, but they had not taken care of it.
>
> 5. No one from maintenance ever responded to my request to repair or replace the lights.

The condominium documents designate defendant as the entity responsible for maintaining the project's common areas. However, defendant had no person designated to inspect the common areas or to repair them as needed. It did not employ a maintenance person. The president of the condominium association is Dave Bullock and in effect defendant association is wholly controlled

by Bullock Enterprises,[2] which also owns several adjacent non-condominium apartment buildings as well as many of the condominium units in the project.[3]

Bullock testified that he never personally inspected or maintained the common areas in the condominium. He testified that maintenance of the common areas would have been performed by JBC, a management company that defendant had contracted with since 2011. But the owner of JBC, Jeffrey Podolski, disagreed, testifying that his company was not contracted to maintain or repair the common areas, that they never performed inspections or maintenance or even had a person on site, and that he was only in the building once a year at most. He testified that per defendant's direction, JBC's responsibility for the common areas was limited to passing along complaints they received from tenants to Bullock and then, upon direction from Bullock, hiring outside contractors to perform repairs if Bullock directed them to do so. According to Podolski, Bullock and his wife "have on-site folks, whether it's [the Bullocks] or their maintenance man, Kevin Goodrich, to perform inspections." He explained that JBC has no employees to perform maintenance work, and when asked specifically about light bulb replacement he stated that such work was not within its contract.[4] He testified that it was his understanding that Goodrich "was conducting regular inspections of these buildings." This was consistent with Bullock's description of Goodrich as "my maintenance manager." However, Goodrich was the "maintenance man" only for the apartment buildings, not the condominium project. He received a paycheck only from Bullock Enterprises, not defendant.

Although Bullock and Podolski both stated they relied exclusively on Goodrich to perform inspections and repairs on defendant's behalf, Goodrich testified that: he never performed any inspections of the condominium buildings; it was not his job to do so; he would only perform maintenance in the condominium buildings if directed to do so by Bullock; and he did not receive payment from the association. He testified that "[i]t was not my responsibility to do inspections of the hallways" and that it was his understanding that inspection of the common areas "would be the tenants' responsibility." He also testified that "it [was] not mine or Bullock Enterprises [job] to deal with the common areas or hallways." He was paid by Bullock Enterprises to do maintenance work in the apartment building and by JBC to do clean up on the outside grounds. He also conceded that he had not even been inside the building for a month or two before plaintiff's fall and that even if a light was out in a condominium hallway, he would not replace it unless he was directed to do so by Bullock.

Thus, there is substantial evidence to support plaintiff's claim that defendant did not inspect or maintain the common areas and that no individual had the responsibility to do so on defendant's

---

[2] Bullock Enterprises owned 46 out of the 72 condominium units, and Bullock testified that the association "board is really controlled by Bullock Enterprises" and that there are no regular meetings of the board.

[3] According to Kevin Goodrich, there was a total of 16 buildings between the condominium and the apartments.

[4] He also testified that he did not attend defendant's meetings.

behalf—or at least that no one knew that it was their responsibility. Bullock, Goodrich and Podolski each asserted that it was someone else's job, not theirs.

In sum, the evidence taken in the light most favorable to plaintiff would establish that the lights were out in the stairway for weeks, that defendant never inspected the common areas and that it ignored repeated complaints that there were no working lights in common areas including in a lengthy stairway. In spite of this, the majority would hold that defendant's wholesale failure to inspect and maintain the common areas violates *no* legal duty, indeed that there is no duty to violate. I cannot agree and so dissent.

## II. ANALYSIS

Plaintiff has raised two grounds for liability. First, that defendant failed to meet its duty under premises liability common law because an unlit stairway is not reasonably safe. Defendant responds, and the majority agrees, that defendant has no such duty because this condition was open and obvious. While I agree that the dangerous condition presented by the unlit stairs was open and obvious, I would conclude that there is a question of fact whether special aspects exist making the condition unreasonably dangerous. Second, plaintiff alleges that defendant failed to comply with MCL 554.139, which requires that common areas in a leased or licensed residential premises be "fit for the use intended by the parties." I agree that caselaw holds that this provision only creates a duty to rental landlords, but I would conclude that under the facts of this case, defendant stands in the shoes of the condominium unit owner that rented to plaintiff.

## A. COMMON LAW DUTY

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Estate of Trueblood v P&G Apartments, LLC*, 327 Mich App 275, 285; 933 NW2d 732 (2019) (quotation marks and citation omitted). The duty owed by the defendant's depends on the plaintiff's status, and in this case there is no dispute that plaintiff was an invitee. "[P]remises possessor owes a duty to undertake reasonable efforts to make its premises reasonably safe for its invitees." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 477; 760 NW2d 287 (2008) (quotation marks and citations omitted).

To the extent that the majority concludes that an unlit, darkened interior stairway is reasonably safe, I disagree.[5] The majority reaches this conclusion by dividing the condition into two separate aspects and then analyzes each without consideration of the dangerousness of the actual hazard. This is error. The hazard is not merely a "staircase" nor merely "darkness." The

---

[5] The majority's analysis indicates that there was no hazard or dangerous condition, but then grants summary disposition to defendant on the basis that the condition was open and obvious. If there is no dangerous condition, however, the open and obvious condition does not come into play. See *Prebenda v Tartaglia*, 245 Mich App 168, 170; 627 NW2d 610 (2001) ("If a condition is not dangerous, it is senseless to consider whether that condition is open and obvious."). Thus, the majority's holding is unclear.

hazard in this case is a dark, unlighted 12-step staircase. By dividing this single hazard into two, the majority manages to pronounce it safe. But the reality is that a long interior staircase that has no light is not reasonably safe—at a minimum, a jury could readily and reasonably find that it is not.

I agree with the majority that the darkness in and of itself is not a hazard. I also agree that a properly constructed stairway is not in and of itself a hazard. However, when one puts them together they create a single hazard—a stairway to be traversed without being able to adequately see the individual steps.[6]

The majority's conclusion is inconsistent with the foundational decisions in the open and obvious jurisprudence. As the Supreme Court observed in *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617; 537 NW2d 185 (1995), a premises owner has no duty "to make ordinary stairs 'foolproof.' " However, *Bertrand* goes on to recognize that "where there is something unusual about the steps, because of their 'character, location, or surrounding conditions,' then the duty of the possessor of land to exercise reasonable care remains." *Id.* (citation omitted). "If the proofs create a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide." *Id.* See also *Abke v Vandenberg*, 239 Mich App 359, 363; 608 NW2d 73 (2000) ("[E]ven if the condition that caused plaintiff's fall had been open and obvious, the trial court would still have been obligated to deny defendant's motions if there existed a question of fact regarding whether the condition was unreasonably dangerous."). Indeed, in *Bertrand*, the Supreme Court reversed a grant of summary disposition when the plaintiff fell from a single step because "one can reasonably argue that the defendant should have reasonably anticipated a congested pedestrian traffic pattern causing an invitee to fall off the step" and therefore the Court could not "find as a matter of law that the risk of harm was reasonable." *Bertrand*, 449 Mich at 624. The Court concluded that

> because a genuine issue existed regarding whether the defendant breached its duty to protect the plaintiff against an unreasonable risk of harm, in spite of the obviousness or of the plaintiff's knowledge of the danger, summary disposition was inappropriate. Whether the risk of harm was unreasonable and whether the defendant breached its duty to exercise reasonable care by failing to remedy the danger are issues for the jury to consider. [*Id.* at 624-625.]

More recently, Judge GLEICHER addressed the issue in her concurrence in *Blackwell v Franchi (On Remand)*, 327 Mich App 354, 268; 933 NW2d 762 (2019) (GLEICHER, J., concurring):

---

[6] The cases cited by the majority are inapposite. In *Abke v Vandenberg*, 239 Mich App 359; 608 NW2d 72 (2000), the plaintiff had fallen off a loading dock that he did not see due to a lack of lighting in the premises. This Court affirmed *denial* of a directed verdict motion and a JNOV motion, each of which was based on an open and obvious argument. In *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135; 565 NW2d 383 (1997), the only alleged hazard was the darkness; there was no claim that the defendant was responsible for the trajectory of the hockey puck that struck the plaintiff. And of course, *Singerman* involved the sui generis circumstance of plaintiff's participation in a fast moving hockey game.

It is certainly true that a normal, well-lit, eight-inch step is not objectively dangerous; objectively, the likelihood of injury for a person walking down a *visible*, everyday step approaches zero. But an invisible eight-inch step poses a different risk. [Emphasis added.]

In this case, the existence of the *stairway* was visible to plaintiff—she was trying to use the stairs to go to a lower floor of the building. However, the individual steps were not. She testified, "As I started walking down, I couldn't see the step. The next thing I know. . . my boyfriend was there waking me [at the bottom of the staircase]." And as already noted, three other residents described the situation respectively as "complete darkness," "too dark to even see the stairs" and "at night it was too dark to see the stairs." The darkness rendering the individual steps invisible plainly falls within the Supreme Court's discussion of special aspects in *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 525; 629 NW2d 384 (2001):

Simply put, there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition. Indeed, it seems obvious to us that if an open and obvious condition lacks some type of special aspect regarding the likelihood or severity of harm that it presents, it is not unreasonably dangerous. We cannot imagine an open and obvious condition that is unreasonably dangerous, but lacks special aspects making it so.

In this case there is both a special aspect—the inability to see the steps due to the darkness—as well as the fact that if a person falls down the long stairway as a result there is a significant likelihood of severe harm. *Lugo* held that "special aspects that give rise to a uniquely high likelihood of harm or severity of harm[7] if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine." *Id*. at 519.

Defendant points out that there are two stairways in the building and that plaintiff does claim that the other stairway was dark. Because plaintiff had an alternative means of getting to the first floor, defendant argues no exception to the open and obvious doctrine applies. However, the "special aspects" exception is wholly independent from the "no other alternative path" exception. Thus, regardless of the existence of a second stairway, the stairway in question, which remained open for use, presented a high likelihood of harm and it also presented a likelihood that the resultant harm would be severe. In this circumstance, defendant has violated its duty even if plaintiff's decision to use the staircase was unreasonable. Absent application of the open and

---

[7] The Supreme Court used the example of a thirty-foot unguarded pit in the middle of a parking lot. *Lugo*, 464 Mich at 518. How it came to select 30 feet remains unknown and no evidence was cited in support, but one need merely stand at the top of an unlit 12-step stairway to recognize that it presents both a high likelihood of harm and that such harm could be severe, either of which constitute special aspects. While not 30 feet, a fall of down a long flight of steps cannot be compared to a fall while walking on a flat surface as is typically seen with trip-and-fall and slip-and-fall cases.

obvious doctrine, any unreasonable action by the plaintiff must be considered as a basis for comparative negligence and not the elimination of the duty to change the light bulbs.

In addition, plaintiff testified that she chose the front stairway because the door at the back of the building was routinely left unlocked and she feared that an intruder could be waiting at the bottom of those stairs. In other words, she preferred to face the risk of the darkened stairway to the risk of assault.[8] One can argue her choice was unwise or even unreasonable, particularly in retrospect. But that is a determination for the factfinder.

### B. MCL 554.139

The majority also concludes that defendant is not subject to MCL 554.139(1), which provides:

> In every lease or license of residential premises, the lessor or licensor covenants:
>
> (a) That the premises and all common areas are fit for the use intended by the parties.

The majority concludes that this statute mandating maintenance of common areas does not apply here, concluding that it applies only to common areas of multi-unit premises that are leased by the owner. I recognize that in *Francescutti v Fox Chase Condominium Ass'n*, 312 Mich App 640, 642; 886 NW2d 891 (2015), this Court concluded that MCL 559.139 did not apply to condominiums because it applies only to "leases or licenses of residential premises." However, in this case, the condominium documents allow unit owners to rent out their units, and plaintiff was a tenant and resided in the condominium unit pursuant to a lease in which the unit owner was the landlord. Since unit owners are barred from making changes to the common areas, and they lease their premises with defendant's permission, it is clear that—at least as to common areas—it is defendant that is in the role of landlord and so should have to comply with MCL 559.139 as to those who lease rather than own the units.[9] Moreover, MCL 559.160 demonstrates that as to the common areas, condominium associations are subject to suit by anyone regarding the condition of the common areas:

---

[8] The majority opines that the risk of an intruder was the same whatever stairway she used. There is no evidence that that is the case and I am not certain why a panel of three judges are better positioned to make that determination than a jury. And whether and to what degree plaintiff was comparatively negligent in making that choice is certainly for the jury.

[9] Even if defendant is not a lessor as to plaintiff, it may fairly be described as a licensor as it impliedly gave plaintiff permission to reside in the unit and use the common areas. The Supreme Court has recently granted oral argument on an application to consider the definition of "licensee" under MCL 559.139 and whether a licensee must enter into a contract with the licensor for the statute to apply. *Walker v Hela Mgt, LLC*, ___ Mich ___ (2021) (Docket No. 163475).

Actions on behalf of and against the co-owners shall be brought in the name of the association of co-owners. The association of co-owners may assert, defend, or settle claims on behalf of all co-owners in connection with the common elements of the condominium project.

As for whether the darkened stairway was "fit for its intended purpose," it is clear that it was not for the reasons discussed above, i.e., an interior staircase with no lighting is not fit for its intended purpose which is not merely to permit transit between floors but to do so in a manner that is reasonably safe.[10] At a minimum, there is a question of fact as to its fitness.

The determination of whether a common area is fit for its intended purpose is not an issue of law. It is an issue of fact. This was made clear in *Allison v AEW Capital Management, LLP*, 481 Mich 419; 751 NW2d 8 (2008). There, the question was whether a parking lot with one to two inches of snow on it was fit for its intended use as a parking lot. The Court did not hold that conditions of snow or ice could never render a parking lot unfit; rather it held pursuant to MCR 2.116(C)(10) that "there could not be reasonable differences of opinion" regarding whether this level of natural accumulation rendered the parking lot unfit. *Id*. at 430. It recognized, however, that even a natural accumulation could render a parking lot unfit were there "much more exigent circumstances than those obtaining in this case." *Id*.[11]

*Allison* does not mandate a finding that a dark interior staircase is fit for use as a stairway. Moreover, the failure to replace or repair light bulbs is neither a "transitory condition" nor a "natural" occurrence in the manner that winter precipitation is. The burnt-out lights did not naturally fall from the sky, they were burnt out because the owner failed to maintain them. Further the absence of light was not transient. Burnt-out or inoperative lights will not repair or replace themselves (unlike snow which will melt) and until the owner replaces them, the condition will continue indefinitely. In other words, a reasonable person could readily conclude that a long unlit and dark interior stairway represented the kind of "exigent circumstances" that the Court concluded was not present by a parking lot with a modest, transient and natural accumulation of snow on a parking lot.

Further, in *Hadden v McDermitt Apartments, LLC*, 287 Mich App 124; 782 NW2d 800 (2010), this Court held that summary disposition was properly denied in a case based on MCL 554.139 because the common area involved was a staircase. And it so held even though the staircase was outside and the alleged unfitness was due to a natural accumulation of ice. See *id*.

---

[10] Ironically, defendant argues that it was unreasonable for plaintiff to have used the staircase while simultaneously arguing that it was reasonably fit for use. Plaintiff's position does not suffer from the same contradiction. She argues that the staircase was not reasonably fit and that she may be assessed comparative negligence for any unreasonable action.

[11] The significance of the limited scope of the holding was demonstrated in the concurrence of Justice CORRIGAN, who would have held that the statute provides no protection "against transient conditions such as ice or snow" regardless of severity. *Allison*, 481 Mich at 440 (CORRIGAN, J., concurring).

at 132. Thus, the only published caselaw dealing with an allegedly unfit staircase held that summary disposition should not be granted on facts far closer to *Allison* than are present here.

## III. CONCLUSION

As to the common law duty, I would conclude that (1) defendant had a duty to keep the common areas of the condominium project reasonably safe; (2) that the nature of the dangerous condition and its special aspects exempts the case from the open and obvious doctrine or at least creates a question of fact on that issue; and (3) that whether that duty was violated is a question for the factfinder. As to MCL 554.139, I would conclude: (1) that defendant stands in the shoes of the unit owner as landlord to plaintiff and so must comply with the statute; and (2) that the question whether the staircase was fit for its intended purpose is one for the factfinder.

For these reasons I would affirm the denial of summary disposition and remand for further proceedings. Accordingly, I respectfully dissent.

/s/ Douglas B. Shapiro