PATTERSON v. WAGNER.

1. NEGLIGENCE—AUTOMOBILES—DAMAGES—EVIDENCE—SUFFICIENCY.

In an action by an administratrix under the "Death Act" for the negligent killing of plaintiff's decedent, evidence that the funeral expenses amounted to $225, that his minor daughter was dependent upon him, and that he contributed about $25 every two weeks for grocery bills, rent, clothing for the minor daughter, etc., *held*, sufficient to support a judgment for $545.

2. SAME—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS.

Where there are eyewitnesses to an accident, the legal presumption that a decedent was free from contributory negligence does not obtain to the full extent as in cases where there were none.

3. HIGHWAYS AND STREETS—AUTOMOBILES—PEDESTRIANS—DUTIES —NEGLIGENCE.

At crossings on city streets the right of passage is common to all, and both pedestrians and drivers of motor vehicles are bound to exercise reasonable care for their own safety and the safety of others upon the street.[1]

4. NEGLIGENCE—AUTOMOBILES—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Where deceased was struck and killed by an automobile while attempting to cross a street at a public crossing, evidence raising questions upon which reasonable men might differ as to whether deceased was, under all the surrounding circumstances, in the exercise of reasonable care, *held*, to present a question of fact for the jury.

5. SAME—RATE OF SPEED—ORDINANCES.

While a speed in excess of the legal limit prescribed in the State law is in itself *prima facie* evidence of negligence, a lower speed may, according to the circumstances, be excessive and evidence of negligence; due regard to existing conditions at the time and place, the lives and safety of the public being the test.

6. SAME—EVIDENCE—QUESTION FOR JURY.

In an action for the negligent killing of plaintiff's decedent

[1]See notes in 38 L. R. A. (N. S.) 487; 42 L. R. A. (N. S.) 1178; 51 L. R. A. (N. S.) 990.

by the driver of an automobile on a public crossing, contradictory evidence as to the rate of speed at which defendant was driving, *held*, to present a question of fact for the jury as to defendant's negligence.[1]

Error to Jackson; Parkinson, J. Submitted October 11, 1918. (Docket No. 38.) Decided April 3, 1919.

Case by Edna R. Patterson, administratrix of the estate of George F. Patterson, deceased, against Abraham H. Wagner for the negligent killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Affirmed.

*Forrest C. Badgley* and *F. H. Dusenbury,* for appellant.

*John F. Henigan,* for appellee.

STEERE, J. Plaintiff as administratrix recovered a verdict and judgment against defendant under the so-called "death act" (section 14577, 3 Comp. Laws 1915), in the circuit court of Jackson county in the sum of $545 and costs, for fatal injuries sustained by her father, George F. Patterson, at the intersection of East Main and VanDorn streets in the city of Jackson on the evening of May 27, 1916, caused by the right front fender of defendant's automobile striking him.

Defendant brings error and asks reversal on the three grounds of failure to prove defendant negligent, contributory negligence of plaintiff's intestate, and that even if actionable negligence by defendant and freedom from contributory negligence by decedent were shown there is no proof of any damages as contemplated by the death act nor any basis shown from which the amount of damages, if any, could be ascertained.

---

[1]See notes in 25 L. R. A. (N. S.) 40; 38 L. R. A. (N. S.) 487; 42 L. R. A. (N. S.) 1178; 51 L. R. A. (N. S.) 990.

At the time of his injury and death deceased was over 59 years of age, a widower, living near the scene of the fatal accident, on the east side of VanDorn street in the second block north of Main street with his two daughters Edna and Irene, the three constituting the family, he being employed as an assistant section foreman by the Lake Shore division of the New York Central Railroad Co. His daughter Edna, since married, was then 26 years of age and self-supporting. She and her father worked and earned wages, while Irene, then 18 years of age, kept house under the older sister's direction and assistance, also working out at times, and had worked a week in the telephone office during the month of the accident. Deceased was in normal health and condition for his age except, as his daughter Edna testified:

"There was a peculiarity about my father's walk. My father was hurt in a railroad wreck ten years ago. On one foot there was no toes. The toes settled down into the bottom of his foot and he wore a shoe—an inch sole on his shoe and he reeled when he walked because he had to protect that foot. There was no power in that foot, and that is the reason it made him stagger. The toes were off his left foot. * * * My father did reel when he walked—when he walked any place where the sidewalk or road was bad."

Her testimony on this subject was given on rebuttal to meet, or explain, that given by certain of defendant's witnesses who noticed deceased just as the accident was about to occur, and testified that he staggered, as though intoxicated, apparently from his course against or in front of the right fender of the car which struck him.

Main street in the city of Jackson runs east and west, intersected by VanDorn, running north and south, Park avenue being the next intersecting street to the west, near the Michigan Central railroad cross-

ing, with a slight up-grade from there to VanDorn. The accident occurred near the southwest corner of Main and VanDorn streets at about 8 o'clock in the evening or a little after, witnesses variously characterizing the visibility as between daylight and darkness, quite dusk, dark, and practically dark except for the street lights which were on. A double-track street car line extends along Main street at that point which is a business portion of the city just to the east of the union railroad passenger station.

Defendant was a business man about 55 years of age, his vision and other faculties normal, and accustomed to driving a car. He had owned and driven the car he was using that evening, a "Buick 37," since September, 1914, and was familiar with its operation. He had "just got the car out," as he states, and was driving down to a station on the south side of Main street in the next block east of VanDorn to get some gasoline. There were three persons in the car, defendant and Mrs. DeMay, his cousin, on the front seat and her daughter, a girl about ten years old, on the rear seat. He was driving and sat on the left at the wheel, Mrs. DeMay being on the right and to the south nearest the curb. The headlights of the car were lit, with the dimmers on.

Deceased was in a barber shop on the south side of Main street between VanDorn street and Park avenue to get shaved about 8 o'clock and finding them busy paid his bill, took a number and left, stating he thought he had "time to go over to the house." The proprietor of the shop, who knew deceased, testified he was not then intoxicated, and he heard about 30 minutes later of his being killed.

It is undisputed that deceased was struck and killed by defendant's automobile at the intersection of Main and VanDorn streets, the direct cause of death being a fracture of his skull as testified to by a physician

called to see him shortly after the event. That he was in the street and staggered just before he was hit is the testimony of all defendant's witnesses who saw him at that time. The cause of his doing so, his then condition and negligence in that particular were clearly for the jury. The barber whose shop he left shortly before the accident testified he had not been drinking, his daughter Edna testified that he had a crippled foot that caused him to stagger or reel when he walked in any place where the sidewalk or road was bad, and Mr. Gusenbar, a witness for plaintiff, whose photograph studio was about 40 feet west of where the accident happened and who saw it, afterwards helping to pick deceased up and carry him into his place of business, testified that there was "a depression in the pavement near the place where he was struck." Further saying:

"There is a crosswalk across Main on the west side of VanDorn. It is all the same sidewalk clear to the curb there, so you couldn't distinguish where the crosswalk would be. It is all pavement. Patterson wasn't over five feet east of the west line of VanDorn street in Main street. * * * He was about half way between where the curb would be on the south side of Main and the street car track."

Confirmatory of the place of the accident, a witness of defendant named Myrtle Benn testified that while standing on the south side of Main street, that evening, at the west corner of VanDorn and Main, she saw a man on the sidewalk start out to the curb and go out into the street, saying:

"The man staggered and that is about all I know—that he was in front of the car. I got away from there as quick as I could. * * * I saw something was going to happen and I got right away. I saw him go from the curb right out into the street. He was on the same side of the street I was."

This locates the accident practically at a regular

crossing for pedestrians at the intersection of two streets in a business portion of the city, where there was a lighted street lamp hung over the center of the intersection, as defendant testified. In Babbitt on Motor Vehicles (2d Ed.), § 385, it is said to be a fundamental rule of law and common sense—

"that motor vehicles must be driven slowly on approaching a crossing. The test seems to be whether the driver has control of the situation, whether he is so driving that he can stop if necessary soon enough to avoid an accident."

It is conceded that by ordinance the lawful rate of speed for automobiles in that part of the city is limited to ten miles per hour, exceeding which is charged in plaintiff's declaration, and also violation of the provisions of sections 21 and 22 of Act No. 302, Pub. Acts 1915 (1 Comp. Laws 1915, §§ 4817, 4818), which provide:

"No person shall operate a motor vehicle upon a public highway at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the highway, or so as to endanger the life or limb of any person or the safety of any property; * * * Upon approaching an intersecting highway, * * * a person operating a motor vehicle shall have it under control and operate it at such speed as is reasonable and proper, having regard to the traffic then on such highway and the safety of the public.

"Upon approaching a person walking in the roadway of a public highway, * * * a person operating a motor vehicle shall slow down to a speed not exceeding ten miles an hour and give reasonable warning of its approach and use every reasonable precaution to insure the safety of such person." * * *

The questions brought up by defendant were saved for review by proper objections, motions and request for directed verdict during the trial and the weight of conflicting evidence is not before the court. Of

the claim that there is no evidence on which to base an award of damages, it was shown that the expenses of deceased's burial were approximately $225, that his youngest daughter was a minor living with him and dependent, that he was earning $65 per month and customarily contributed for the household about $25 every two weeks, which the older daughter expended for grocery bills, rent, clothing for the younger daughter, etc. The trial court carefully instructed the jury that only the younger daughter would be entitled to compensation, for what she was deprived of in that respect until she was 21 years of age. There was evidence to support, in the discretion of the jury, the verdict of $545.

On the assignment of error that deceased was guilty of contributory negligence which precluded recovery and for that reason a verdict should have been directed for defendant, it is to be borne in mind that this accident occurred at a crossing and the injured party is dead. His mouth is closed as to how he came there, what observations he made, whether or not he looked before starting to cross, if so, what judgment he exercised in regard to what he observed and what caused him to stagger, or reel, and appear about to fall when struck, as witnesses of defendant state was the case. It is true when there are eyewitnesses to the accident, the legal presumption that a decedent was free from contributory negligence does not obtain to the full extent as in cases where there were none (*Baker* v. *Delano*, 191 Mich. 204), but no witness is shown to have observed deceased until he stepped off the curb into the street at or near a proper crossing for foot passengers, where he had a right to be, and apparently reason to go, on his way home, and where it was also defendant's duty to exercise special care in anticipation both of crossing pedestrians and vehicles. Relative to the mutual rights and

duties of those using the highway at such points it is said in Babbitt on Motor Vehicles (2d Ed.), § 1295:

"At crossings on city streets the right of passage is common to all and both pedestrians and drivers of motor vehicles are bound to exercise reasonable care for their own safety and the safety of others upon the street. The footman is not required as matter of law to look both ways and listen but only to exercise such reasonable care as the case requires. Both pedestrians and drivers are required to exercise that degree of care and prudence which the conditions demand. It is impossible to formulate any more precise definition of these relative rights and duties."

Unlike street cars or railroad trains, which in their noisy progress are confined to the narrow line of their rail tracks, automobiles with practically equal capacity for speed can range the road in substantial silence. They can and do traverse the streets at much greater speed, with much less noise, than other highway vehicles in common use, and on the other hand can be more surely and easily controlled by those experienced in their use. The duty and responsibility of those driving them should be, and is, proportioned to the possibilities and dangers attending the use upon the public highways of such an instrumentality of travel and transportation. It is but a rational rule which emphasizes the driver's duty of special vigilance at crossing points on city streets where the right of passage is not only free and common to all, but in common and frequent use both by pedestrians and vehicles. While the duties of reasonable care for their own safety and that of others are imposed upon both pedestrian and driver, the driver's comparative personal safety in case of collision with a pedestrian is not to be overlooked in measuring his duty to exercise commensurate care for the safety of others.

Deceased was lawfully on the street at this crossing when injured. There is evidence from which it

may be inferred he was attempting to cross while on his way to his home. Whether under the conditions known or which should have been known to him he, in deciding to cross at that time and place, was in the exercise of reasonable care, and what caused him to stagger and partially fall, if he did so, are questions upon which the circumstances furnish fair material for the minds of reasonable men passing upon the facts to differ. It was properly left to the jury to say under the facts shown and inferences which could reasonably be drawn from the evidence under all the surrounding circumstances, whether deceased was in the ordinary exercise of reasonable care.

Of the contention that no negligence is shown on the part of defendant, it is first contended that the only negligence properly charged is "excessive and unreasonable speed" and that there is no competent evidence showing that the legal limit of ten miles an hour was exceeded. The declaration, which contains two lengthy counts, not only charges an excessive and dangerous rate of speed with failure to give warning but makes special reference to the statute and defendant's duties under it, which it charges, amongst other things, he violated by failure upon approaching the intersecting street to operate his motor vehicle—

"with due care and caution and with due regard for the safety of travelers and persons lawfully in said highway so as not to injure a person lawfully there, but on the contrary carelessly and negligently and without seeing or discovering the fact that said plaintiff's intestate was in such highway, lawfully crossing said intersection and in the exercise of due care and caution for his own safety, with great force and violence ran said motor vehicle against the body of plaintiff's intestate," etc.

While a speed in excess of the legal limit is in itself *prima facie* evidence of negligence, a lower speed may,

according to the circumstances, be excessive and evidence of negligence. The rate of speed must always be reasonable and proper, having due regard to existing conditions at the time and place, the lives and safety of the public being the test.

There were estimates of speed from observation and proof of facts from which inferences might be drawn constituting competent evidence to carry the question of defendant's negligence to the jury, whose function was to weigh it and determine. The speed was estimated as high as 15 miles an hour by one witness named Sims who saw the accident from a distance of about 12 rods. He frankly admitted his estimate was in the nature of a guess, but stated facts on which he based his estimate, which were for the jury. He was then a stranger to all the parties interested, and happened to be on the west side of VanDorn street about a block south of Main on his way down town with his wife when his attention was first drawn to the accident, as he testified, by hearing a woman scream followed by another scream just as he saw an auto shoot out from, to him, behind a building on the southwest corner of Main and VanDorn streets and its right fender hit a man and throw him down so that it "sounded a good deal like the falling of a tree or something like that—a sharp crash" and going down there he saw the man lying in the street with his feet to the north; he saw the car go about ten or twelve feet before it struck the man and it stopped near the southeast corner of VanDorn and Main streets, and said his judgment of the speed was from those observations. The witness Gusenbar, who helped pick the deceased up, was at his own automobile in front of his studio and about to start home when the accident occurred. He testified that his attention was suddenly attracted by a woman's scream, almost immediately followed as he looked in that direction by

his hearing what he designated as the "crash of the man being hit by the car" and in another portion of his testimony as "the crash of the man's head"; that as he first threw his eyes that way he saw the car going east on the south side of Main street eight or ten feet from the curb, he heard no horn and noticed no effort to slack up before it struck the man nor did he see it swerve, and "it went two and a half or three car lengths" after it hit him; that he had himself driven a car for about eight years and judged this car, which was a Buick, was going ten or twelve miles an hour. Of the persons in the car defendant was the last to notice deceased. The little girl on the back seat said she thought she saw him first; that her mother "said to Mr. Wagner, 'Look out, there is a man coming,'" and when she told him to look out he swung his car over and put the emergency brake on. Mrs. DeMay, sitting in front with defendant, who thinks she might have screamed but does not remember, and whose not always lucid narrative is at times somewhat self-contradictory, said the car was running as indicated by the speedometer between seven and eight miles an hour and moved "about a length and a half or twice its length after it hit the man." In her direct examination her account of the accident is as follows:

"I first saw Mr. Patterson. I noticed an object. It was dark. There was no garage there on the corner and apparently it was dark. I heard the scuffling of feet. I looked and saw an object. I saw a man. I did not know at first whether it was a man, an animal or a dump cart. It appealed to me first it was a cart. I couldn't make out at first what it was. When he drew nearer the car he scuffed and staggered and I saw he had his hand up like that (illustrating). He staggered over toward the car. I saw him stagger toward the car. He stepped up and put his hand on the front fender at the side. I called Mr. Wagner's attention to it. I saw him put his hands on the fender. When he put his hand on the fender he seemed

to put his hand out to balance himself. At that time the man wasn't straight up. He was in a stooped position. He put his hands up to balance himself, and he took another step and fell down. The car didn't run over him."

Defendant, who gave darkness as a reason for not seeing deceased sooner, also testified that it was because he was "looking straight ahead," that his lamps were lighted, an arc light was hanging over the intersection of the two streets, and street lights all the way along, that from where he sat he could see his front right fender when his "attention was called to it" and there was nothing to prevent him seeing any one approaching the fender, that he first saw deceased when Mrs. DeMay said, "Look at that man there" (also when she screamed), and the next he saw was "his hand go on the fender," and he then threw the car away from him, applied the emergency brake and threw out the clutch, and the car ran a little over its length after it hit him. A witness of defendant's who had put in eight years in the automobile business, saw the accident and testified as an expert that the car was going not to exceed seven miles an hour, also testified on cross-examination that on a dry pavement a car of that make "wouldn't go over half its length with the emergency brake on—possibly two-thirds of the length according to the tires, whether they are old or new tires."

Whether, as between defendant and deceased, the accident was attributable to either, or both, or neither of them, were questions of fact properly submitted to the jury.

The judgment is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.