*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER HENDERSON,

        Plaintiff-Appellee,

v

CITY OF DETROIT,

        Defendant-Appellant

and

PATRICIA LEE LAUDERDALE,

        Defendant.

UNPUBLISHED
March 18, 2021

No. 350858
Wayne Circuit Court
LC No. 18-009403-NI

Before: O'BRIEN, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Defendant, City of Detroit,[1] appeals as of right the trial court's order denying defendant's motion for summary disposition under MCR 2.116(C)(7) and (10). We affirm.

## I. BACKGROUND

This case arises from an accident involving plaintiff, who was driving a tow truck, and Patricia Lauderdale, who was driving a bus for the City of Detroit. While the respective drivers' conduct before the accident is disputed, it is undisputed that the accident occurred while plaintiff

---

[1] Although Patricia Lauderdale is also listed as a defendant, she was never served and plaintiff has not otherwise indicated that he wishes to pursue further action against her. Therefore, as used in this opinion, "defendant" refers only to the City of Detroit.

was attempting to pull from a parking lane[2] into a travel lane occupied by Lauderdale, and Lauderdale hit plaintiff.

Plaintiff filed his complaint on August 2, 2018, alleging that Lauderdale was negligent and that defendant was liable for Lauderdale's negligence. In answer, defendant mostly denied the pertinent allegations. As part of its affirmative defenses, defendant asserted that plaintiff failed to plead in avoidance of defendant's immunity from tort liability under the Government Tort Liability Act (GTLA), MCL 691.1401 *et seq*. Defendant also asserted that plaintiff's own negligence was the proximate cause of any injury he suffered, and that plaintiff's recovery was barred because he was more than 50 percent at fault for the accident.

Plaintiff gave deposition testimony about the at-issue accident twice—once during discovery in this suit, and once during discovery in a suit he filed against his insurer, Liberty Mutual. At his deposition in the Liberty Mutual case, plaintiff testified both that he was parked before the accident and that he was driving but stopped in the "[t]he right lane" before the accident. Regardless, plaintiff testified that the accident happened when he was "attempting to get in the lane [immediately to the left of him] and got hit by a bus." According to plaintiff, he saw the bus behind him, and it was stopped. He then "tried to signal to get over in the left lane" "[u]sing [his] blinker and signal," as well as his hand, but the bus accelerated from the stopped position and hit him. The collision happened on the driver's side of plaintiff's vehicle.

When asked to explain the bus's "activity," plaintiff responded:

> The bus was behind me. There was a car in front of the bus, and before the accident the bus was stopped. I signaled the bus to get over out of the right lane into the left lane because I was trapped, so I attempted to get in the left lane, and she, once the car in front of her moved up she hit me, she revved the engine to go and hit me. I wasn't even able to get out of the lane.

Plaintiff claimed that he did not get any part of his vehicle into the left lane. Plaintiff also claimed that when he signaled with his hand, he looked Lauderdale "dead in her face to get over," and once he attempted "to get over," Lauderdale "just rudely just like—basically trying to block me from getting over."

Plaintiff's deposition testimony from the instant suit largely mirrored his testimony from the Liberty Mutual case. Plaintiff testified that, before the accident, he "was driving"—but was stopped—in the "far right lane . . . attempting to get in the lane left of [him]." Plaintiff explained that the bus hit him while he "was attempting to change lanes from the far right lane into the lane

---

[2] As will be explained, plaintiff's testimony during his depositions is inconsistent with respect to whether he was parked in a parking lane or stopped in a traffic lane before the accident, but photos taken after the accident show that he was pulling out of a parking lane before the accident. Plaintiff's statement of facts on appeal comports with these photos, providing that plaintiff "was parked" before the accident, and the accident occurred when he attempted to pull into "the first travel lane." Regardless, whether plaintiff was parked before the accident is not relevant to this appeal's disposition.

next to [him] to the left." He said that "the bus was about a block away behind [him]" when he first signaled to get over. Plaintiff estimated that "[i]t was about 30 seconds" from the time he saw the bus to the collision. According to plaintiff, the bus must have come into his lane "because [he] never got a chance to get out of [his] lane," and Lauderdale must have misjudged "the space in between the bus and the tow truck." He denied that the front of his truck ever crossed over into the other lane. Plaintiff testified that before the accident, his blinker was on indicating that he was attempting to get into the left lane, and he only "[s]lightly" accelerated. He denied ever turning his steering wheel, and said that he could not explain how the bus hit him while he was in his lane and that it must have been the bus driver's "poor judgment."

Plaintiff was then asked whether the bus was in his lane, and he said that he could not say, and that "[t]o the most of [his] knowledge," the bus and his tow truck were in their respective lanes. When asked how the collision could have occurred if both vehicles were in their respective lanes, he said:

> To my knowledge me attempting to get into the left lane she just hit me. I don't know. I can't explain how if she turned, I can't explain that part because it was to the back of me so I can't really make a clear judgment on how she did it.

There are numerous pictures and four videos on a DVD in the lower court file, all depicting the positions of the vehicles following the accident. Because the videos and pictures depict the vehicles after the accident, they provide little insight into how the accident occurred. The pictures and videos do, however, reveal that plaintiff was pulling out of a parking lane. They also contradict plaintiff's testimony that he never pulled out of his lane—the pictures and videos show that the left side of the tow truck is slightly in the lane to its left, and the left side of the tow truck appears to be touching or almost touching the right side of the bus.

Defendant eventually moved for summary disposition under MCR 2.116(C)(7) and (10), arguing that plaintiff failed to establish a question of fact whether Lauderdale was negligent. Defendant attached to its motion an affidavit from Lauderdale. In the affidavit, Lauderdale averred that before the accident, she was stopped at a light, and when the light turned green, she was proceeding "with the flow of traffic" when "a tow truck quickly pulled out of the park lane and hit the right side of" Lauderdale's bus. Lauderdale said that the tow truck gave her "no warning" before "attempt[ing] to cut [her] off." Lauderdale estimated that she was going about 15 to 20 miles per hour at the time of the collision. Defendant contended that, on the basis of Lauderdale's affidavit and plaintiff's deposition testimony, the evidence established that only plaintiff was negligent because he attempted to merge into Lauderdale's lane "without first ascertaining that such a lane change could be made with safety."

When plaintiff filed his response, he submitted two affidavits: one from Jacklyn Radney and one from plaintiff. In Radney's affidavit, she averred that she was a passenger on Lauderdale's bus on the day of the accident and that, before the accident, Lauderdale "was exceeding the speed limit; she was going like a 'bat out of hell.' " Radney claimed that Lauderdale "apparently" failed to see plaintiff's tow truck and consequently "hit the truck knocking [it] back towards the curb lane." In plaintiff's affidavit, he gave the following account of the accident:

8. On the day of the accident, I was in my company's tow truck parked on Warren Ave., East of Woodward, facing West in the parking lane. There were some vehicles heading West on Warren, but the traffic was not heavy.

9. Before pulling out into the travel lane closest to me, I looked behind me and saw a bus with a car in front of it stopped at a red light at the intersection east of me but also traveling westbound on Warren. I saw the light turned green and the car and bus started to move. I knew I had plenty of time to pull carefully into the lane next to me. I had turned on my left turn indicator.

10. As I was pulling slowly into the travel lane, I saw the car that was in front of the bus several car links behind me but in a lane to the left of where I was entering.

11. As I continued, I suddenly heard the bus's engine, as it accelerated. The bus was traveling at least 50 miles an hour. There was nowhere for me to go and the bus sideswiped my vehicle.[3]

On the basis of his and Radney's affidavits, plaintiff contended that there were questions of fact for trial. Plaintiff argued that Radney's statement that Lauderdale "was speeding, going like a bat out of hell" established a question of fact whether Lauderdale's negligence was the cause of the accident.

After a hearing on defendant's motion, the trial court took the matter under advisement, and eventually issued a written opinion. In the opinion, the court recited the relevant facts and law, then concluded:

Here, there is conflicting evidence whether or not either Plaintiff violated MCL 257.642(l)(a) by entering another lane while it was not safe or the bus driver violated MCL 257.627(1) by speeding. Therefore, as to whether or not the City is liable for negligence under the motor vehicle exception provided in MCL 691.1405, there is a material issue of fact upon which reasonable minds may differ. . . . Until this issue is resolved, the Court may not decide the issue of the City's entitlement to governmental immunity.

This appeal followed.

---

[3] When plaintiff first submitted his and Radney's affidavits, neither was signed. In the days after the response was submitted, however, plaintiff supplied the trial court with properly executed affidavits from the two witnesses. The properly executed affidavits do not differ in substance from the ones submitted with plaintiff's response.

## II. STANDARD OF REVIEW

On appeal, defendant argues that the trial court erred by denying defendant's motion for summary disposition. We disagree.

Appellate courts review de novo a trial court's grant of summary disposition. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). Defendant moved for summary disposition under MCR 2.116(C)(7) and (10), arguing that there were no genuine issues of material fact that the motor-vehicle exception did not apply so defendant was entitled to governmental immunity as a matter of law. As explained by this Court in *Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010):

> MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law. When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. [Footnotes omitted.]

In *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), our Supreme Court explained the standard for a motion under MCR 2.116(C)(10) as follows:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. ANALYSIS

Under MCL 691.1407(1), a governmental agency is immune from tort liability if it is engaged in a governmental function, subject to certain exceptions. See *Robinson v City of Lansing*, 486 Mich 1, 6; 782 NW2d 171 (2010). Neither party contests that defendant is a governmental agency. Nor do the parties dispute that Lauderdale, who was driving a school bus owned by defendant at the time of the accident, was engaged in a governmental function. Thus, under MCL 691.1407(1), defendant was immune from tort liability absent an exception. The exception at issue is the motor-vehicle exception in MCL 691.1405, which provides, "Governmental agencies shall

be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner[.]" The question now before this Court is whether Lauderdale was negligent in her operation of the bus.

To sustain a claim of negligence, a plaintiff must show: (1) a duty existed from the defendant; (2) the defendant breached that duty; (3) the breach was the proximate cause of the injury; and (4) damages. *Latham v Nat'l Car Rental Sys, Inc*, 239 Mich App 330, 340; 608 NW2d 66 (2000). The plaintiff has the burden of producing evidence sufficient to support a prima facie case of negligence. *Berryman v Kmart Corp*, 193 Mich App 88, 91-92; 483 NW2d 642 (1992). Driving at "a speed in excess of the legal limit is in itself prima facie evidence of negligence[.]" *Patterson v Wagner*, 204 Mich 593, 601; 171 NW 356 (1919).

When defendant moved for summary disposition, it submitted the affidavit of Lauderdale, in which she averred that she was driving under the speed limit and that the accident occurred when plaintiff, without signaling, pulled into Lauderdale's lane from the parking lane, causing the accident. Based on this evidence, defendant contended that Lauderdale was not negligent.

In response, plaintiff submitted his and Radney's affidavits in which they each averred that Lauderdale was speeding before the accident. Regardless of whether plaintiff's estimate of Lauderdale's speed was speculation (as defendant contends), Radney's assertion that Lauderdale was speeding was clearly not speculation—Radney averred that she was a passenger on Lauderdale's bus on the day of the accident and that Lauderdale "was exceeding the speed limit" just before the accident. Because driving at "a speed in excess of the legal limit is in itself prima facie evidence of negligence," *Patterson*, 204 Mich at 601, Radney's testimony that Lauderdale was exceeding the speed limit before the accident was sufficient to create a question of fact whether Lauderdale was negligent, and consequently whether the motor-vehicle exception to governmental immunity applies.

The closer question is whether a reasonable juror could only conclude that plaintiff was more than 50% at fault for the accident,[4] thereby barring his recovery under MCL 500.3135(2)(b).[5] A driver owes a duty to other motorists and pedestrians to exercise ordinary and reasonable care and caution in the operation of his vehicle. *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956). He must make reasonable allowances for traffic, weather, and road conditions. *DePriest v Kooiman*, 379 Mich 44, 46; 149 NW2d 449 (1967). Apart from this standard duty of care, a driver has a statutory duty to ascertain whether movement into a lane can be safely made before

---

[4] Although defendant failed to raise this issue in the trial court, this Court is exercising its discretion to review the issue because it "involves a question of law and the facts necessary for its resolution have been presented." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192-193; 920 NW2d 148 (2018).

[5] MCL 500.3135(2)(b) states, "Damages shall be assessed on the basis of comparative fault, except that damages shall not be assessed in favor of a party who is more than 50% at fault."

changing into the lane. MCL 257.642(1)(a). Violation of a statutorily imposed duty constitutes a prima facie case of negligence. *McKinney v Anderson*, 373 Mich 414, 419; 129 NW2d 851 (1964).

Plaintiff testified that he was always in his lane, and "never got a chance to get out of [his] lane" and into Lauderdale's lane. When reviewing a motion for summary disposition, the evidence is to be taken in the light most favorable to plaintiff as the nonmoving party, *Allison*, 481 Mich at 425, and courts must refrain from passing judgment on a witness's credibility, *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v Harris*, 550 US 372, 380; 127 S Ct 1769; 167 L Ed 2d 686 (2007). See also *Fuhr v Trinity Health Corp*, 495 Mich 869, 869 (2013) (adopting the dissenting opinion in *Fuhr v Trinity Health Corp*, unpublished per curiam opinion of the Court of Appeals, issued April 16, 2013 (Docket No. 309877), which in turn adopted *Scott*'s rule for disregarding testimony that is so "blatantly contradicted by the record" that "no reasonable jury could believe it" when deciding whether there was a genuine issue of material fact in a motion for summary disposition).[6] Plaintiff's deposition testimony that he never crossed into Lauderdale's lane is blatantly contradicted by the photos and videos depicting the positions of the vehicles following the accident, which show that the front of plaintiff's truck was partially in Lauderdale's lane. Thus, no reasonable juror could credit plaintiff's testimony that he never crossed into Lauderdale's lane, and we decline to adopt that version of the facts for purposes of ruling on whether defendant is entitled to summary disposition. Instead, as the photos and videos clearly depict, plaintiff crossed into Lauderdale's lane.

Consequently, plaintiff was negligent by moving into Lauderdale's lane without first ascertaining that it was safe to do so, resulting in the accident. MCL 257.642(1)(a); *McKinney*, 373 Mich at 419. In light of this negligence, plaintiff was at least partially at fault for the accident. The question is whether a reasonable juror could find that plaintiff was not more than 50% at fault for the accident. Viewing the evidence in the light most favorable to plaintiff, a reasonable juror could.

When viewed in in the light most favorable to plaintiff, the evidence suggests that plaintiff saw Lauderdale's bus stopped at a light and determined that he had enough time to pull into the Lauderdale's lane. But, after the light turned green, Lauderdale accelerated until the bus was traveling in excess of the posted speed limit, despite plaintiff indicating with both his signal and hand his intent to pull into Lauderdale's lane. As a result, when plaintiff inched into Lauderdale's lane, the bus sideswiped plaintiff's truck. While plaintiff was required to anticipate that he could safely enter Lauderdale's lane, MCL 257.642(1)(a), he was not required to anticipate that Lauderdale would quickly accelerate from her stopped position to speeds in excess of the posted speed limit so as to effectively block plaintiff from entering the bus's lane, see *Hale v Cooper*, 271

---

[6] In *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012), our Supreme Court explained that an order issued by the Michigan Supreme Court that adopts the dissenting opinion in the Court of Appeals constitutes binding precedent.

Mich 348, 354; 261 NW 54 (1935) (explaining that a driver is not required "to guard against every conceivable result, to take extravagant precautions, [or] to exercise undue care").

Further, although plaintiff was negligent by pulling into Lauderdale's lane when it was not safe to do so, a jury could reasonably conclude that Lauderdale's driving in excess of the posted speed limit significantly contributed to the accident. The pictures from after the accident show that the bus and the tow truck were virtually next to each other following the collision. If Lauderdale was speeding before the accident but was still able to stop so that the bus and tow truck were essentially next to each other, a juror could reasonably infer that the accident may have been avoided altogether if Lauderdale had been driving within the posted speed limit.

Moreover, while Lauderdale did not have a duty to anticipate plaintiff entering her lane when it was not clear to do so, see *id.*, she did have a duty to attempt to avoid the collision after it became clear that plaintiff was going to enter her lane, see *McGuire v Rabaut*, 354 Mich 230, 236; 92 NW2d 299 (1958) (explaining that "a favored driver" was entitled to assume "that his right of way would not be contested" by "a subordinate driver" until it became clear that the "subordinate driver" intended "to challenge or obstruct [the favored driver's] right of way," at which point "[the favored driver's] duty to attempt to avoid the impending collision began"). According to plaintiff, he repeatedly signaled to Lauderdale his intent to move into her lane before doing so, and was inching into the lane before the accident. Radney testified that Lauderdale "apparently" failed to see the tow truck moving into the bus's lane and consequently hit the truck. Viewing this evidence in the light most favorable to plaintiff, a reasonable juror could conclude that Lauderdale's failure to avoid the collision once it became clear that plaintiff was going to "challenge" her right of way largely contributed to the collision. Relatedly, a reasonable juror could conclude that Lauderdale's ability to avoid the collision once she was duty-bound to do so was significantly hindered by her negligently driving the bus in excess of the posted speed limit.

Accordingly, when viewing the evidence in the light most favorable to plaintiff, a reasonable juror could find that plaintiff was not more than 50% at fault for the accident, despite that he negligently pulled into Lauderdale's lane.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher